| | |
|---|---|
| ,70 | 501 |
| ·131 | 253 |
| 131 | 266 |
| 70 | 501 |
| 136 | 150 |
| 70 | 501 |
| 144 | 457 |
| 70 | 501 |
| 155 | 630 |
| 70 | 501 |
| 160 | 24 |
| 160 | 263 |
| 70 | 501 |
| 169 | 88 |
| 70 | 501 |
| 190 | 106 |
| 70 | 501 |
| 205 | ⁵617 |
| 70 | 501 |
| 217 | ⁰487 |
| 33 SC | ² 65 |

## Ogden's Appeal.

1. A testator directed the residue of his personal estate to be divided into eight parts, and gave three to trustees to hold for the sole use and benefit of his three daughters in equal parts during their lives respectively; to pay them the interest, and their receipts, whether sole or married, to be the discharge, no part of the investments to be the changed without the daughters' consent; he made no disposition of the personal estate after their death; he directed his real estate to be divided into eight parts, and gave three to the trustees to hold for the sole use and benefit of the same daughters, with authority to lease for years or on ground-rent in fee, with the consent in writing of each particular daughter, her part not to be redeemed before her death, and pay the rent to such daughter, whether sole or married, her receipt to be a discharge; on the death of either daughter to such persons as she should direct by will and in default of a will to her lawful issue in equal shares, and in default of such issue to her brothers and sisters in equal shares, and the lawful issue of such as might then be deceased. "To avoid all doubts," he declared that the daughters should have power, whether "sole or married," by will to dispose of all their "estates, real and personal, hereby vested in the said trustees." The will was dated in 1838 and proved in 1841, one of the daughters then being a minor and no marriage contemplated; she married in 1845; a bill was filed in 1871 by daughter and husband against the trustee for an account and payment of personal estate and conveyance of the real estate. *Held*, that the daughters each took an estate in fee tail free from any trust and an absolute interest in the personal estate.

2. Active trusts are sustained even as to cestuis que trust *sui juris*, where the donor intends them to answer some legal and useful but temporary purpose, not obnoxious to the law against perpetuities.

3. A trust for coverture, there being no immediate marriage contemplated, cannot take effect.

4. An active trust having no object for the benefit of the cestui que trust will not be continued for the mere benefit or pleasure of the trustee. The object of the donor having failed, the law will execute the use.

5. A devise to the lawful issue of the first taker primâ facie creates a fee tail; even where the devise to the first taker for life.

6. Words of distribution or tenancy in common, without more, will not reduce the inheritance to a life estate.

7. The devise over in this case to the brothers and sisters in default of issue did not restrict the estate to one for life, the failure of issue being indefinite.

February 16th 1873. Before AGNEW, SHARSWOOD and WILLIAMS, JJ. THOMPSON, C. J., at Nisi Prius.

Appeal from the decree of the Court of Common Pleas: In Equity: No. 129, to July Term 1871.

This case arose on the will of Cadwalader Evans, who died in 1841. The will was dated March 3d 1838, and proved November 15th 1841; it is as follows:—

* * * "I give, &c., to my dear wife, to hold so long as she shall continue my widow, the house in which I now reside, situate on the north side of Mulberry street, &c., in Philadelphia, together with the lot of ground upon which the same is erected, containing, &c., and also all my household and kitchen furniture. And I do also give and bequeath unto her, two thousand dollars

[Ogden's Appeal.]

a year, so long as she shall continue my widow, out of the rents and profits of my real estate, or personal, or both, as she may at any time, within one year from the time of my decease, designate, elect and choose, the same to be in full of dower. And from and after the determination of my widow's estate in the premises, I give, &c., the said house, &c., with the household and kitchen furniture, above mentioned, to my daughters Julianna, Margaret and Harriet; or to such of them as may be and remain unmarried, to hold to them respectively so long as they, or any of them may remain unmarried. And after the determination of my said daughters' interest in the premises, the said house and lot of ground and the household and kitchen furniture shall be sold and the net proceeds thereof shall be equally divided amongst such of my children as may be then living, and the lawful issue of such as may be then deceased; the issue to take amongst them such share as their parent would have taken were he or she living. And I do hereby authorize my executors, or the survivor of them, to sell and convey in fee simple, the said house and lot of ground as soon after the determination of my daughters' estate in the premises as may conveniently be done, and I do also authorize and empower them to sell and convey in fee simple my lands, &c., in Chester county and in Berks county, at such time or times as they may think favorable, and the moneys arising from all these sales shall be divided, and pass to, as is hereinafter directed, respecting my personal estate.

"And it is my will, that whatever real estate, ground-rents or personal property of any that shall be selected by my dear wife for the payment of the annuity hereinbefore bequeathed to her, shall be vested in the said trustees, and the rents, &c., thence arising, shall be paid to her as the same becomes due. And immediately after her decease, the real estate, as well as the personal, shall be divided amongst my sons and daughters, severally, in equal shares. But my daughters' shares shall be vested in the said trustees, in the same manner, and for the same purposes as is herein directed with respect to their share of the residue of my personal estate."

He then directed the education of his minor children, to be paid for out of his estate, and a fund for that purpose to be set apart before dividing his personal estate.

"All the residue, &c., of my personal estate not hereinbefore disposed of, of whatever kind, shall be divided into eight equal parts;" one of these parts he gave to each of his five sons, "and the three remaining parts I give and bequeath to my executors (whom I do hereby constitute trustees for the purposes mentioned in this my last will), and the survivors and survivor of them in trust, &c., that they will hold the said three equal shares for the sole use and benefit of my three daughters, Julianna, Margaret

and Harriet, in equal parts during their lives, respectively, and will pay over to them respectively, the interest, &c., * * * and the receipts of my daughters respectively, whether they be sole or married, shall be a sufficient discharge for the same; and it is also my will that my stocks of various kinds shall be divided (after setting aside those which shall be selected by my dear wife) amongst my five sons and the said trustees for the purposes above mentioned, and no part of what is vested in the said trustees shall be sold or disposed of by them without the consent of my wife or daughters respectively being first had in writing; nor then, unless it be for the purpose of investing the proceeds in some other productive property, to be held in trust as aforesaid, for the benefit of my said wife and daughters respectively." Loans, &c., which might be paid in, to be reinvested for the same uses.

The testator then provided that his otherwise undisposed of real estate, situate in Philadelphia county, should, upon the arrival of his youngest child at the age of twenty-one years, be divided into eight equal parts by referees, to be chosen by his children, and that one of these parts should be given to each of his five sons.

The remaining three parts he devised as follows:—

"And the three remaining parts I give, &c., to the trustees herein named, and the survivors and survivor of them, &c. But in special trust that they and the survivors and survivor of them, shall and will hold the said three parts for the sole use and benefit of my three daughters, Julianna, Margaret and Harriet, each one part in severalty. And it is further my will that either or all of the three parts hereby vested in trustees for the use or benefit of my said daughters may (by and with the consent of my said daughters respectively, first had in writing) be let for a term of years, or on ground-rent for ever; but may be redeemed at any time after the decease of the daughter to whom such part may have been allotted, but shall not be redeemed before her decease; such rents to be paid to the said trustees, or the survivor of them, in trust and special confidence that they will pay them, without delay, only to my daughters, respectively, whether they be sole or married, and whose receipts only shall be their discharge; and in further trust and confidence, that they, at, or immediately after the decease of either of my daughters they will convey all the rights and interests vested in them, in trust, for the use of such deceased daughter, to such person or persons as she by her last will and testament may direct, and in default of such will and testament, then to her lawful issue, in equal shares, and in default of such issue, then to her brothers and sisters, in equal shares, and to the lawful issue, if any there be any, of my children who may then be deceased; such issue to take what their parent would have taken had he or she been living."

[Ogden's Appeal.]

"And to avoid all doubts which might arise, I do hereby declare that it is my intention that my said daughters respectively shall have full power and authority, whether they or either of them be sole or married, to dispose of by testament and last will, in such manner as they may think proper, all their respective shares of the estates, real and personal, hereby vested in the said trustees."

Harriet V. Evans, a daughter, was a minor at her father's death, not contemplating marriage.

The youngest child arrived at age on the 2d of September 1842, and in 1843 partition of the real estate was made by referees in accordance with the will.

Harriet V. Evans married Gouverneur M. Ogden, May 22d 1845.

On the 11th of June 1866, Manlius G. Evans was substituted trustee for Harriet in the place of the then surviving trustee.

On the 18th of April 1871 Ogden and wife filed a bill in the Court of Common Pleas against Manlius G. Evans, setting out the foregoing facts, and also that the complainants had applied to the trustee to make to the said Harriet V. Ogden a transfer of the personal property, and a conveyance of the real estate held in trust for her, which they were informed and believe she is entitled to hold absolutely; and that the said trustee had refused to do this, except under the direction of the court, &c.

The prayers were: An account of the personal property, the payment of the balance in the trustee's hands, and a conveyance of the real estate in fee simple.

The answer admitted the averments of the bill, alleged the trust to be a subsisting and valid one, and asked that the bill be dismissed with costs.

The case was heard on bill and answer in the Court of Common Pleas.

The court (Ludlow, J.) dismissed the bill.

The plaintiffs appealed to the Supreme Court, and assigned the dismissal of their bill for error.

*S. S. Hollingsworth* and *G. W. Biddle*, for appellants.—As to real estate: The gift to the daughters gives them each a legal estate. Express trusts that have been sustained in this state can be classified under these heads:—

1. Special trusts for married women: Lancaster *v.* Dolan, 1 Rawle 231; Pullen *v.* Rianhard, 1 Whart. 520.; Thomas *v.* Folwell, 2 Id. 11; Wallace *v.* Coston, 9 Watts 137; Cochran *v.* O'Hern, 4 W. & S. 95; Nice's Appeal, 14 Wright 143; Wells *v.* McCall, 14 P. F. Smith 207.

2. Trusts to preserve property from creditors of cestui que trusts. "Spendthrift son trusts," as they are sometimes called:

Fisher *v.* Taylor, 2 Rawle 33; Holdship *v.* Patterson, 7 Watts 547; Ashhurst *v.* Given, 5 W. & S. 323; Vaux *v.* Parke, 7 Id. 19; Brown *v.* Williamson, 12 Casey 338; Shankland's Appeal, 11 Wright 113; Keyser's Appeal, 7 P. F. Smith 236; Rife *v.* Geyer, 9 Id. 393.

3. Trusts where active duties are imposed on the trustees: Barnett's Appeal, 10 Wright 392; Sheets's Estate, 2 P. F. Smith 257; McBride *v.* Smyth, 4 Id. 245; Bacon's Appeal, 7 Id. 504; Wickham *v.* Berry, 5 Id. 70.

The trust is void, as a trust for the separate use of a married woman, because not made in immediate contemplation of marriage: Smith *v.* Starr, 3 Whart. 62; Hamersley *v.* Smith, 4 Id. 126; McBride *v.* Smyth, 4 P. F. Smith 250; Wells *v.* McCall, 14 Id. 207.

The devise does not create an active trust requiring a legal estate in the trustees during the lives of the daughters. The direction to the trustees to convey after the decease of the daughters to the uses of their wills, or in default of a will to their *issue*, will not keep the trust alive: Barnett's Appeal, 10 Wright 392; Nice's Appeal, 14 Id. 143; Bacon's Appeal, 7 P. F. Smith 513. The direction to pay the rents to the cestui que trust will not of itself make the trust an *active* one: Rife *v.* Geyer, *supra.* The intention of a testator was to create a trust for the sole and separate use of a married woman, and such a trust only as shown by the language of the will: Lee *v.* Prieaux, 3 Brown's Ch. 382; Goulder *v.* Carum, 1 De Gex, Fisher & Jones 146; Jamison *v.* Brady, 6 S. & R. 467.

By the use of apt technical words to create an estate for the sole and separate use of a married woman: Adamson *v.* Armitage, 19 Vesey 416; Ex parte Ray, 1 Maddock 115; Inglefield *v.* Coghlan, 2 Coll. Ch. 247; Lindsell *v.* Thacker, 12 Sim. 178; Ex parte Killick, 3 Montagu, Deacon and De Gex 487; Hawkins on Wills 116–118; Lewin on Trusts 240–241; 22 Law Lib. 122 and notes; Snyder *v.* Snyder, 10 Barr 423; Hamersley *v.* Smith, *supra ;* Dodson *v.* Ball, 10 P. F. Smith 497; Jones's Appeal, 7 Id. 369; Koenig's Appeal, Id. 352; Freyvogle *v.* Hughes, 6 Id. 228; Megargee *v.* Naglee, 14 Id. 216.

The gift to the daughters gives them each an estate in fee simple absolute. Where an estate is given to a person generally or indefinitely, with a power of disposition, it carries a fee, and the only exception to the rule is, where the testator gives to the first taker an estate for life *only*, by certain and express words: Jackson *v.* Robins, 16 Johns. 587; Flintham's Appeal, 11 S. & R. 23; Smith *v.* Starr, *supra ;* Pepper's Will, 1 Pars. 441; Girard Life Ins. Co. *v.* Chambers, 10 Wright 490; Church *v.* Disbrow, 2 P. F. Smith 219; Freyvogle *v.* Hughes, 6 Id. 230.

The limitation, after the decease of the first taker, in default

[Ogden's Appeal.]

of a will, " to her lawful issue in equal shares," makes the daughters tenants in tail: Hayes on Real Estate 17 ; 2 Jarman on Wills 329 *et seq.* ; Hawkins on Wills 189; Eichelberger *v.* Barnitz, 9 Watts 447 ; Taylor *v.* Taylor, 13 P. F. Smith 481.   The addition of the words "in equal shares," will not change this primâ facie meaning: Hayes on Real Estate, table I. 39; table III. 69, 70; Doe *v.* Applin, 4 Term R. 82; Doe *v.* Cooper, 1 East 229 ; Harrison *v.* Harrison, 7 Man. & Gr. (49 E. C. L. R.) 938.   Superadded words of limitation *alone*, will not make " heirs of the body" words of purchase: Hawkins on Wills 184; 2 Jarman 337 ; Jesson *v.* Wright, 1 Bligh 1; Criswell's Appeal, 5 Wright 291; Paxson *v.* Lefferts, 3 Rawle 59–75; George *v.* Morgan, 4 Harris 95. Nor will superadded words of *distribution:* Moore *v.* Brooks, 12 Grattan 135; Maurer *v.* Marshall, 4 Harris 377; Hawkins on Wills 190; Cannon *v.* Rucastle, 8 C. B. (65 E. C. L. R.) 876; Haldeman *v.* Haldeman, 4 Wright 29.

*R. Evans*, for appellee.—The devise created an active trust: Vaux *v.* Parke, 7 W. & S. 23 ; Barnett's Appeal, 10 Wright 393 ; Ashhurst *v.* Given, 5 W. & S. 328; Pullen *v.* Rainhard, 1 Wharton 521; The Girard Life and Trust Co. *v.* Chambers, 10 Wright 486; Shankland's Appeal, 11 Id. 113; Sheets's Estate, 2 P. F. Smith 257; Wickham *v.* Berry, 5 Id. 71; Bacon's Appeal, 7 Id. 504; Rife *v.* Geyer, 9 Id. 396.   The use will not be executed where it is apparent that the intention of the testator was otherwise: Ashhurst *v.* Given, 5 W. & S. 328; Rife *v.* Geyer, 9 P. F. Smith 395; Fisher *v.* Taylor, 2 Rawle 37.   The daughter was married before the Married Women's Act of 1848, which does not affect the vested rights of a husband: Burston's Appeal, 10 Harris 167 ; Bachman *v.* Chrisman, 11 Id. 163.   The limitation, in default of appointment, is good by way of executory devise: 2 Black. Com. 173; Jackson *v.* Robins, 16 Johns. 587; Ide *v.* Ide, 5 Mass. 500; Ramsdell *v.* Ramsdell, 21 Maine 293; 1 Jarman on Wills 792, note; Fearne on Rem. 226; 2 Sugden on Powers 4; 1 Id. 127.   "Issue" is not a proper technical word of limitation: 2 Black. Com. 115; Taylor *v.* Taylor, 13 P. F. Smith 483; Montgomery *v.* Montgomery, 3 Jones & Lat. 47; Sibley *v.* Perry, 7 Ves. 532; Redfield on Wills, part II. 360.   The gift to the issue in equal shares makes them take as purchasers: Hockley *v.* Mawbey, 1 Ves. Jr. 149; Fearne Cont. Rem. 154 and 197 ; Findlay *v.* Riddle, 3 Binn. 139; Abbott *v.* Jenkins, 10 S. & R. 297 ; Guthrie's Appeal, 1 Wright 9; Powell *v.* The Board of Missions, 13 Id. 46 ; Walker *v.* Milligan, 9 Id. 180.   An estate tail is not subject to the Intestate Act, but descends as at common law: Guthrie's Appeal, 1 Wright 16; Chew's Appeal, Id. 24; Reinhart *v.* Lantz, Id. 488 ; Hawkins on Wills 193.

The opinion of the court was delivered, May 13th 1872, by

[Ogden's Appeal.]

AGNEW, J.—If the trust for Mrs. Harriet V. Ogden, under the will of her father, Cadwalader Evans, *be active,* as decided by the learned judge of the Common Pleas, his decree was right. This, therefore, is the real question. Since the decision in Barnett's Appeal, 10 Wright 392, overruling Kuhn *v.* Newman, 2 Casey 227, *active* trusts are sustained even as to cestuis que trust *sui juris,* where the intent of the donor is to make the trust answer some useful and legal but temporary purpose, not infringing upon the law of perpetuities: Wells *v.* McCall, 14 P. F. Smith 212. The subject of active trusts is discussed and some of their purposes adverted to in Rife *v.* Geyer, 9 P. F. Smith 395–6, and Dodson *v.* Ball, 10 Id. 496–7. The trust stated in Barnett's Appeal, *supra,* affords an illustration of an active trust for a son *sui juris,* and the means of contrasting with it the trust in this case, and thus defining the true character of the latter. The following cases decided since Barnett's Appeal may also be referred to as instances of active trusts, and will be useful in determining this case: Shankland's Appeal, 11 Wright 113; Sheets's Estate, 2 P. F. Smith 266–67; McBride *v.* Smyth, 4 Id. 245; Wickham *v.* Berry, 5 Id. 70; Bacon's Appeal, 7 Id. 504; Rife *v.* Geyer, 9 Id. 393; Springer *v.* Arundel, 14 Id. 218.

In each one of these cases the intent of the donor or testator to clothe his trustees with a control over the estate and prevent it from passing into the hands of the cestui que trust is clear, and in each his purpose was lawful, to accomplish an object not inconsistent with law, nor with that general policy which forbids unnecessary restraints upon alienation. In view of the principles regulating active trusts, it is obvious that the first question to be asked upon the will of Cadwalader Evans is, what purpose had he in view in the creation of the trust made for his three daughters of the real estate devised to them. The answer is immediate. None is disclosed except that which is to be inferred from these expressions, viz. : his devise to their " *sole use and benefit ;*" the payment of the rents to them " whose receipts, whether they be *sole or married,* shall be a discharge ;" and the power " whether they or either of them be *sole or married,* to dispose of their share by will." No other expressions are to be found in this will from which a purpose can be inferred in the creation of the trust. These expressions, therefore, disclose the testator's purpose to provide a trust for coverture, and to preserve the estates of the daughters against the authority and title of their husbands, as the law stood at the date of this will. This being the case, the next question is, whether the trust for coverture took effect at the death of Mr. Evans. The date of his will is March 23d 1838, and he died in the autumn of 1841, his daughter Harriet then being a minor and not contemplating marriage. She did not marry Mr. Ogden until May 1845. These facts are averred in the bill and

admitted in the answer. The trust for coverture not being in immediate contemplation of marriage, never took effect: see the authorities collected in Wells *v.* McCall, *supra.* The active duties referred to by the court below having sole reference to this supposed trust, necessarily fell with it. An active trust having no object to accomplish for the benefit of the cestui que trust, clearly will not be continued for the mere benefit or pleasure of the trustee. The object of the testator having failed, or ceased, the law will execute the use: Freyvogle *v.* Hughes, 6 P. F. Smith 228; Koenig's Appeal, 7 Id. 353; McBride *v.* Smith, 4 Id. 245; Dodson *v.* Ball, 10 Id. 493; Magargee *v.* Naglee, 14 Id. 216; Yarnall's Appeal, decided at this term (*antea* 335).

A different purpose, perhaps, might be imputed to the testator in this instance, if the devise of his real estate had been to his daughter for *life only;* for then it might be inferred that the trust was not merely for coverture, but to preserve the contingent remainders to the brothers and sisters and their issue. This, therefore, gives rise to another question, to wit, the quantity of estate or interest vested in the three daughters. There is no express limitation to them for life. The intention of the testator must therefore be derived from the entire scope of the will: Sheets's Estate, 2 P. F. Smith 263–4; Freyvogle *v.* Hughes, 6 Id. 230; Haldeman *v.* Haldeman, 4 Wright 29. The first point to be noticed is that this will was made after the passage of the act relating to wills, on the 8th of April 1833, the 9th section of which declares that all devises of real estate shall pass the whole of the estate of the testator in the premises, although there be no words of inheritance or of perpetuity, unless it appears by a devise over or by words of limitation or otherwise, in the will that the testator intended to devise a less estate. The trust "for the sole use and benefit of my three daughters, Julianna, Margaret and Harriet, each one part in severalty," would therefore import a fee, unless we can discover an intent to restrict it. We cannot infer a restriction for life in the direction to the trustees to convey the share of a " deceased daughter to such person or persons as she may by her last will and testament direct, and in default of such will and testament, then to her lawful issue in equal shares." The will being made before the passage of the Act of 1848 relating to the property of married women, it was necessary to confer the power to devise or will in order to escape from the title and authority of the husbands of the daughters; the act relating to wills having excepted married women out of the persons who can dispose of their property by will, unless under a power legally created for the purpose, or with the assent or license of their husbands, in the case of personal estate. The clause as to the lawful issue of the daughters, it is true, restricts the fee, but does not restrict the interest to a life estate. It is well settled

that a devise to the lawful issue of the first taker is primâ facie a limitation to the heirs of the body of the devisee, and therefore vests a fee tail; and this is the case even where the devise to the first taker is expressly for life: Taylor v. Taylor, 13 P. F. Smith 481; Haldeman v. Haldeman, 4 Wright 29; Physick's Appeal, 14 Id. 128; Nice's Appeal, 14 Id. 143. It requires more than mere words of distribution to limit this primâ facie effect of the phrase. The words "in equal shares," without something else to indicate the intention of the testator, will not reduce the inheritance to a mere life estate. Even the words "as tenants in common" will not of themselves limit the entail: Smith on Executory Interests, § 475; Cresswell's Appeal, 5 Wright 288–291. Nor does the devise over to the brothers and sisters in default of issue of the daughters restrict their interest to an estate for life; for the failure of issue on which the devise over rests is indefinite, and the devise over is therefore uncertain in point of time, and entirely contingent. The only expression in the will that gives any color to the notion of a life estate in the daughters, is that which provides for a redemption of the estates let for a term of years or on ground-rent for ever, "at any time after the decease of the daughters to whom such part may have been allotted, but shall not be redeemed before her death." In a doubtful case the inference from this provision might turn the scale, but there is no doubt arising in other parts of this will, while the provision itself can be fairly attributed to the intent of the testator to strengthen the trust for coverture he supposed he was creating, and thereby to prevent the redemption-money from passing into the control of the husbands of his daughters as the law then stood. In view of all the provisions of the will, our conclusion is, that each of the daughters took an estate of inheritance in fee tail, freed, as we have seen, from any trust for coverture or otherwise.

The daughters also took an absolute interest in the personal estate. At first blush the will seems to direct otherwise, for the trust is, "that they will hold the said three equal shares for the sole use and benefit of my three daughters, Julianna, Margaret and Harriet, in equal parts *during their lives respectively*, and for no other use or purpose whatever; and will pay over to them respectively the interest, dividends and profits on their several shares, as the same becomes due and is received; and the receipts of my daughters respectively, whether they be sole or married, shall be a sufficient discharge for the same." But a closer examination of all the parts of the will discloses a different intention. And first, it is observed that the intent of the testator in this item of his will is similar to that in the item relating to the real estate, to wit, to provide a trust for coverture to preserve the estates of his daughters. Hence, when he says, "and for no other purpose whatever," he evidently refers to the sole and separate character

[Ogden's Appeal.]

of the use and not to the extent of it as contained in the words "during their lives respectively." Then, when we examine the general provisions of the will, we find that this item is a residuary clause, wherein he divides all the residue and remainder of his personal estate not before disposed of, and of whatever kind, into eight equal parts, giving to each of his five sons one equal part, and to his executors as trustees the remaining three equal parts in trust for his three daughters, as above stated, without any limitation over, or other disposition of them after the death of his daughters or any of them.

The intent to make a final and equal disposition of all the residue of his personal estate among his eight children is therefore clear, while it is equally obvious that the trust was interposed for the lifetime of his daughters, as a protection merely against any husbands they might take. And then what makes this intent conclusive is found in the general clause following the next succeeding item relating to the real estate, in these words : " And to avoid all doubts which might arise, I do hereby declare that it is my intention that my said daughters respectively shall have full power and authority, whether they or either of them be sole or married, to dispose of by testament and last will, in such manner as they may think proper, all their respective shares of the estate, real and personal, hereby vested in the said trustees." Therefore the personal estate in question being itself only an undisposed *residuum,* the intent of the testator to make his children equal being manifest, the mention of the life estate being only for a special purpose, there being no bequest over, the disposition being analogous to that of the real estate, and finally, the full and absolute power to dispose by will of all the shares vested in the trustees, leave in our minds no doubts of the intention of the testator to vest these three shares in his three daughters absolutely

The decree of the court below dismissing the bill of the plaintiffs is therefore reversed, and the bill is ordered to be restored, and it is ordered and decreed that the defendant, Manlius G. Evans, do account for the personal property held by him as alleged trustee for the sole use and benefit of Harriet V. Ogden, and pay over to her whatever the amount shall be found to be in his hands to which she is entitled under the will of Cadwalader Evans, deceased, and that the said Manlius G. Evans, as such alleged trustee, make a valid transfer and conveyance to the said Harriet V. Ogden, in fee tail general of the real estate which he holds for her sole use and benefit ; and further, that the record be remitted to the court below, with directions to proceed and carry this decree into effect.