# Earp's Appeal.

1. A testator gave the residue of his estate in trust to collect " the rents, income and interest," and pay one-fourth to each of his children during their lives and on the death of either, then to convey, &c., the fourth of the principal to such person as the deceased child by will, &c., might direct or appoint and in case of the death of either child without appointment, to grant, &c., a fourth of the principal unto such persons " as would have been entitled to the same if the said deceased child had been legally seised of the same premises in his or her own right and died intestate." *Held* to be valid active trusts.

2. Barnett's Appeal, 10 Wright 392, recognised; Ogden's Appeal, 20 P. F. Smith 507; Yarnall's Appeal, 20 P. F. Smith 336, distinguished.

January 14th 1874. Before AGNEW, C. J., MERCUR and GORDON, JJ. SHARSWOOD, J., at Nisi Prius.

Appeal from Nisi Prius, No. 16, to January Term 1873: In Equity.

On the 20th of December 1872, George Earp, Hannah R. Earp, William H. Armstrong and Anna E. his wife, in her right, filed a bill against Henry M. Phillips, trustee under the will of Robert Earp, deceased.

The bill set out the death of Robert Earp, November 17th 1848, leaving real and personal estate and having made a will. The bill set out various provisions under the will and the following devise of the residue :—

" I hereby give, devise and bequeath all the rest, residue and remainder of my estate, whatsoever and wheresoever, real and personal, unto my said hereafter-named executors, their heirs,

[Earp's Appeal.]

executors and administrators and assigns, to and for their only proper use and behoof, in trust nevertheless for the following uses, intents and purposes, viz.: in trust to collect the rents, income and interest, and pay one equal fourth part unto my brother Thomas Earp, for the use and benefit of my son Robert Earp, Jr., while he shall be and remain of unsound mind, or to such other person or persons as shall from time to time be his trustee or committee; but in case he shall, at any time, regain the use of his reason, then and from thenceforth, to pay the same to him, the said Robert Earp, Jr., during his natural life; and one equal fourth part thereof unto each of my other three children, viz.: Hannah Earp, Anna Earp, and George Earp, Jr., during their natural lives respectively, and upon the decease of either of my said children, then in trust, as respects one equal fourth part of the principal of my said residuary estate, to grant, convey, assign and transfer the same unto such person or persons as such deceased child may direct or appoint by any last will or writing to be in the nature of a last will, to be by him or her executed in the presence of two or more credible witnesses; but in case of the decease of my said son Robert, without regaining the use of his reason, then in trust, as respects the one equal fourth part of my said residuary estate, to and for the only use and behoof of his surviving sisters and brother, under and subject to the trust hereby declared of and concerning the other three-fourths of my said residuary estate; and in case of the death of either of my said children other than Robert, without making any appointment, then in trust to grant, convey and assign one equal fourth part of the said principal of my residuary estate unto such person or persons as by the laws of the Commonwealth of Pennsylvania would have been entitled to the same if the said deceased child had been legally seised of the said premises, in his or her own right, and died intestate."

The children living at the filing of the bill were George Earp, Jr., Mrs. Armstrong and Hannah K. Earp. Neither of the daughters were married at the testator's death. Thomas Earp died in 1861, and George Earp, Jr., was on his own application discharged as trustee in 1871, and Henry M. Phillips appointed at each time to fill the vacancy; he is the sole trustee under the decedent's will. The plaintiffs averred that the trusts under the will were inoperative, and that they were therefore entitled to an absolute transfer of the personal property and a conveyance of the real estate; the prayers were for an account and such transfer and conveyance.

The answer of the trustee admitted the averments of the bill; he declared his willingness to account and make the transfer and conveyance prayed for, if the court should be of opinion that the plaintiffs were entitled to them.

[Earp's Appeal.]

The bill was dismissed at Nisi Prius *pro formâ* by consent of counsel.

The plaintiffs appealed to the court in banc and assigned the decree for error.

*S. G. Thompson* and *Thompson*, for appellants.—These words vest absolute estates in the appellants. It was the intent of the testator to devise the whole estate to them. On their failure to appoint, the devise is expressly to their heirs. Thus the two estates uniting, the appellants would take absolute estates. The daughters were not married at the time of the decease of the testator. So far as they are concerned no trust can be said to have been made in contemplation of marriage. Not one word occurs which refers to husbands or their control. And in regard to George Earp, Jr., nothing appears which shows that the testator contemplated protecting his estate against claims made by creditors. Yarnall's Appeal, 20 P. F. Smith 335, is a case somewhat similar to the present one : Ogden's Appeal, Id. 501 ; Haldeman v. Haldeman, 4 Wright 30 ; Dodson v. Ball, 10 P. F. Smith 501.

In Guthrie's Appeal, 1 Wright 14, Judge Strong says : " It is very carefully to be noted that in searching for the intention of the donor or testator, the inquiry is not whether remainder-men are the persons who would have been heirs, had the fee been limited directly to the ancestor. The thing to be sought for is, not the persons who are directed to take the remainder, but the *character* in which the donors *intended* they should take: Kay v. Scates, 1 Id. 31. A mere dry trust will not be sustained when the person equitably entitled to any property takes absolutely the entire beneficial interest, and the trustee has no duty to perform unless the trust be a special one intended to accomplish some object: Smith v. Starr, 2 Whart. 63; Ralston v. Waln, 8 Wright 283; Barnett's Appeal, 10 Id. 392; McBride v. Smyth, 4 P. F. Smith 245; Dubs v. Dubs, 7 Casey 189; Potts's Appeal, 1 Id. 168; Megargee v. Naglee, 14 P. F. Smith 216; Shankland's Appeal, 11 Wright 113; Rife v. Geyer, 9 P. F. Smith 393; Nice's Appeal, 14 Wright 143 ; Physick's Appeal, Id. 128; Bacon's Appeal, 7 P. F. Smith 505; Keyser's Appeal, Id. 237.

*E. K. Price*, for appellee.—In the Earp will there is no trust for the sole and separate use of daughters, and no distinction between them and their brother George. The testator wished them all to have no power of alienation over the fee, or to give any husband or wife curtesy or dower in their shares; and the power of sale is vested solely in the executors to accompany limitations that adduced disability to convey. He wished them to have power to *will only*, and that under the restriction of having two credible witnesses present. These were sufficing objects for creating a trust

[Earp's Appeal.]

for life; and there being no *legal* estate in the children, the *legal* remainder in fee could not accrue to them by the rule in Shelley's case : Bacon's Appeal, 7 P. F. Smith 504 ; Rife *v.* Geyer, 9 Id. 393 ; Barnett's Appeal, Bell's Estate, 10 Wright 392 ; Barclay *v.* Lewis, 17 P. F. Smith 316 ; Bacon's Appeal, 7 Id. 504.

A devise on a *special trust* for son and daughters may stand, if there be an expression of such intent; and the testator is the proper judge of the occasion for it.   The gift of the power to devise to the children, shows that an absolute interest is not intended to be given to them : A. Keene's Appeal, 14 P. F. Smith 264.   And so does the power of sale and re-investment of the proceeds by the executors.   Even though the fee be conveyed to one, the grantee may be restrained from alienating it during the life of the grantor : McWilliams *v.* Nisley, 2 S. & R. 507 ; Large's Case, 2 Leon. 82. It may be restricted for an arbitrary term of twenty-one years, without reference to the disability of infancy : Lewis on Perps. 160, 167, (52 Law Lib.) ; or during any number of existing lives, though having no connection with the estate limited.   The law will not control the objects or purpose of the trust, if not for purposes violative of law or sound policy : Rife *v.* Geyer, 9 P. F. Smith. 393 ; Reese *v.* Ruth, 13 S. & R. 434 ; R. J. Wilson's Estate, 2 Barr 329 ; Brown *v.* Williamson, 12 Casey 338 ; Lewis on Perps. 592, 622, 639, 643 ; Sylvester *v.* Wilson, 2 Tenn. R. 444.

The law of Pennsylvania is not hostile to trusts.   It will uphold such as are upheld in England, and will protect the bounty of the benefactor by a special trust to protect from creditors, when in England it would not be protected, as in Fisher *v.* Taylor, 2 Rawle 33 ; Vaux *v.* Parke, 7 W. & S. 19.   No trusts that do not offend against morality, religion, or statutory prohibition, or the policy of the law that forbids a perpetuity, are ever *struck down* in Pennsylvania.

The opinion of the court was delivered, May 11th 1874, by

Agnew, C. J.—Since the return to the former doctrine of trusts, in Barnett's Appeal, 10 Wright 392, it has been our endeavor to maintain trusts upon their true foundation, as a means of preserving the dominion of the donor over his own property for his reasonable purposes, unless where a clear public policy strikes down the trust as no longer useful or as an unnecessary clog upon the title. There is no instance since Barnett's Appeal, to my knowledge, in which this line of decision has been departed from.   Yarnall's Appeal and Ogden's Appeal, relied upon by the appellants as changing the current, are not exceptions, as will be shown presently.   Many special trusts, and some of them for persons *sui juris*, have since been upheld, a few of which are referred to in Ogden's Appeal, 20 P. F. Smith 507.

Why should the law be inimical to those special or active trusts

which enable a testator or other donor to provide for the necessities of a family, and the changes made by death, misfortune or accident, or to enable him to preserve his property for the objects of his bounty, when not contrary to any well defined public policy ?

The right of property is one protected by the bill of rights ; and the right to regulate its use within reasonable limits, is a just corollary from the right itself. Trusts supply the means of carrying out family arrangements, and of breaking the force of the blow death deals against the head. They furnish a protection against improvidence, indiscretion, inexperience, imbecility, misfortune, and even vice, upholding the wishes of parents and friends, and inspiring even the dying with comfort. They are contrary to no principle of justice, wisdom or morality, and therefore demand our confidence and support in proper cases. Hence, when a special trust within these limits is clearly raised by the imposition of active duties on the trustee, or for purposes making it necessary to preserve the estate intended to be given, the will of the donor gives efficacy to the trust. *Voluntas donatoris in charta sui manifeste expressa observanda.*

The trust declared by Robert Earp in his will, is an active special trust, which must be maintained in order to give effect to his clear and well defined purpose in relation to his family. By well chosen words he invested all the residue and remainder of his estate in his executors, their heirs, executors, administrators and assigns, for their only proper use ; in trust nevertheless, to wit : " To collect the rents, income and interest * * * and to pay one equal fourth part thereof unto each of my other three children, viz. : Hannah Earp, Annie Earp, and George Earp, Jr., during their natural lives respectively, and upon the decease of either of my said children, then in trust, as respects one equal fourth part of the principal of my said residuary estate, to grant, convey, assign and transfer the same unto such person or persons, as such child may direct or appoint by any last will or writing in the nature of a last will, to be by him or her executed in the presence of two or more credible witnesses * * * and in case of the death of either of my said children, without making any such appointment, then in trust to grant, convey and assign one equal fourth part of said principal of my residuary estate unto such person or persons as by the laws of the Commonwealth of Pennsylvania, would have been entitled to the same, if the deceased child had been legally seised of the said premises in his or her own right, and died intestate."

In this will there are four things to be noticed, distinguishing it clearly from Yarnall's Appeal and Ogden's Appeal. The *corpus* of the estate is fully and distinctly invested in the trustees, and put under their control. The bequests to the three children, Hannah, Annie and George, are only of the *income*. Their estates in the income are only for *life*, and without regard to *coverture*.

[Earp's Appeal.]

The *principal* is devised and bequeathed to the persons who would be entitled to it under the intestate law.   Here is plainly an active operative trust, following a manifest intention essential to carry it into effect, by holding the *corpus* of the property itself, in the hands of the trustee, during the lives of the testator's own children, irrespective of any purpose in regard to coverture, to enable them to receive and apply the income only to these children, and then to carry over the principal or *corpus* to their issue at their deaths. Without maintaining the trust, this plain and lawful intent cannot be carried into execution.

In Yarnall's Appeal, 20 P. F. Smith 336, the devise and bequest of Mr. Ellis was, "in trust for the only proper benefit, use and behalf of *all* my children that may be living at the time of my decease, and the lawful issue of such of them as may then be deceased, in *equal parts and shares* as hereinafter directed and set forth."   Thus, the trust was of the estate itself and not of the income merely, and not for life, but in language that would carry a fee under Wills Act of 1833, where no contrary intent appears. Following this, was a direction to apply the income of the sons' shares to their use during minority, and to pay the shares themselves to the sons at majority.   Then came the direction as to the shares of the daughters, viz.: "And the parts and shares of my daughters who may then be living at the time of my decease.   I direct my said trustee to hold in trust, to pay the interest and income thereof to my said daughters during their natural lives, *free from the debts, control or engagements of any husband they may have or take*."   This was followed by a power of appointment by the daughters by will, and on failure to appoint to convey their shares to those who would be entitled to take from each under the intestate law.   The trusts for sons and daughters were alike of the *corpus* of the estate, the former being disabled from receiving it only during minority, and the latter being disabled for life manifestly in view of coverture only.   Hence, we held as to the daughters, that the manifest intent being to invest them with the whole estate, and the disability being in view of a coverture which never took place, the only object of the trust having ceased, the trust fell upon well recognised principles as to trusts for coverture. The question on the will was really one of interpretation in order to reach the intent of the testatrix as to the estate she intended to vest in her daughters, and the purpose of the trust.   A trust for coverture is one of the well settled instances in the doctrine of special trusts, where the trust falls when no marriage is in immediate contemplation, or after the coverture has ended by the death of the husband, the doctrine of this state being that the trust does not revive by a second marriage: Megargee *v.* Naglee, 14 P. F. Smith 216, and cases cited; Wells *v.* McCall, Id. 207 ; Freyvogle *v.* Hughes, 6 P. F. Smith 228 ; Koenig's Appeal, 7 P. F.

Smith 352. Perhaps a reason for the fall of this kind of trust is, that the donor having expressed coverture as its purpose, no other intent is presumed. *Expressio unius est exclusio alterius.*

Ogden's Appeal, 20 P. F. Smith 501, was a case precisely of the same nature. Our greatest difficulty there was in the interpretation of the will in order to discover the true intention of the testator. That being ascertained to be similar to the intent in Mrs. Ellis's will, viz., to confer the entire corpus of the estate upon Mrs. Ogden, and create a trust for coverture only, the same conclusion was reached as in Yarnall's Appeal. The opening sentence of the opinion is a key to the case, viz. : " If the trust for Mrs. Harriet V. Ogden, under the will of her father, Cadwallader Evans, *be active,* as decided by the learned judge of the Common Pleas, his decree was right. · This, therefore, is the real question." We thought, the whole estate being intended to vest in her, and the trust intended for coverture only, and no marriage being in contemplation, the trust was not active, and we reversed the decision of the court below. That this court meant ·no attack upon the doctrine of active or operative trusts, the whole of the first paragraph of the opinion distinctly shows. An examination of the will, and of the interpretation of it in the opinion, will prove that Mr. Cadwallader Evans's will has no likeness to that of Mr. Earp ; and that nothing in the opinion countenances a position that would break down the trust in this case. It is proper to remark that the decision upon one will rarely ever forms a precedent for a decision upon another. Even the same words in one are often interpreted differently in another. Instances of these various readings will be found in Yarnall's Appeal, 20 P. F. Smith 341. The reason is, wills being interpreted by the whole instrument, the intentions of testators in the use of the same expression, are discovered often to be as various as their own individuality. Hence, that which may appear to be contrariety of decision, is simply diversity in the testator's intention.

The decree of the Court of Nisi Prius is affirmed with costs, and the appeal dismissed.