## TRUST ESTATE FOR A. C. KUNTZLEMAN.

APPEAL BY CESTUI QUE TRUST FROM THE ORPHANS' COURT OF
PHILADELPHIA COUNTY.

Argued January 30, 1890—Decided October 6, 1890.
[To be reported.]

1. A trust merely for coverture will fall if there is no marriage, in fact or in contemplation, to support it, or, if the cestui que trust becomes discovert by the death of her husband; and the circumstance that the trust imposes active duties upon the trustee will not prevent that result.

Adjudication.

2. But, when an active trust is created to give effect to a well defined, lawful purpose of a testator, in relation to his family, such as the preservation of the corpus of the estate for the benefit of the remainder-men who are to take by purchase, it will be sustained, whether the cestui que trust be sui juris or not.

3. To bring a devise within the Rule in Shelley's Case, the limitation in remainder must be to the heirs, in fee or in tail, as a nomen collectivum for the whole line of inheritable blood; wherefore, the rule does not apply to a devise of income to a daughter for life, with a limitation over to her heirs, exclusive of her husband and mother.

4. Perhaps under Yarnall's App., 70 Pa. 336, if the testator's intention was to create a separate use for the life-tenant, the exclusion of the husband alone would not have the effect of narrowing the line of descent; but the exclusion of the mother undoubtedly does so, and, accordingly, under such a limitation the remainder-men will take as purchasers.

5. Wherefore, when one of the purposes of a testamentary trust, with active duties in the trustee, is to preserve the corpus of the estate for the remainder-men taking under such a limitation, the trust will be upheld, even though the husband and mother of the cestui que trust have died since the death of the testator.

(a) A testator directed that the income of property devised to a trustee for the benefit of his sons, should be paid to them during life "free from their debts," etc., and that the income of a trust devise for his daughter should be paid to her, during life, for her sole and separate use, upon her separate receipt, without the control or interference of any husband:

6. Although the use of the words "free from debts," etc., is perhaps not essential to create a spendthrift trust, their omission, in the case of the daughter, was significant of the testator's intention with respect to her, and the trust for her benefit could not be sustained as a spendthrift trust.

Before STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 81 January Term 1890, Sup. Ct.; court below, No. 26 October Term 1879, O. C.

An account, settled by the Girard Life Insurance, Annuity and Trust Company, substituted trustee under the will of Philip Dorney, deceased, for Amanda C. Dorney, now Kuntzleman, exhibiting a balance in the hands of the accountant, having come before the Orphans' Court for audit, the auditing judge, HANNA, P. J., filed an adjudication in part as follows:

The trust arises under the will of Philip Dorney, deceased, dated March 24, 1840, and duly proved September 16, 1840.

After certain bequests, unnecessary to mention, he gave one equal tenth part of his residuary estate unto George Miller, one of the executors, "in trust, to place and continue the personal estate at interest, on good landed security or interest, or invest the same in some productive public funds, or loans, and to pay the interest and income thereof, and the rents, issues, and profits of the real estate, unto my said daughter Amanda Cornelia Dorney, for her sole and separate use, upon her separate receipt, without the control or interference of any husband she may have or take, for and during all the term of her natural life ; and, from immediately after the decease of my said daughter, Amanda, in trust to and for the only proper use, benefit, and behoof of such persons as would be entitled to the same by the laws of the commonwealth of Pennsylvania, if my said daughter had survived her mother, and husband, if any she may have, and died intestate seised and possessed of the said premises, and for such estate and estates as such person or persons would in such case be entitled to by the laws aforesaid."

It appeared that testator's daughter, at the date of the will, was a child five years of age, of course unmarried, and not in contemplation of marriage. She did not marry until June 14, 1855, and her husband died in November, 1864.

From these facts, the conclusion is clear that the trust for the sole and separate use of the daughter could not be upheld : Wells v. McCall, 64 Pa. 212. And, as suggested by AGNEW, J., in Ogden's App., 70 Pa. 508, if the active duties had sole reference to this supposed trust, they would necessarily fall with it, and "the object of the testator having failed or ceased, the law will execute the use." But this is not all that is contained in this clause of the will. The trust is not alone for the sole and separate use, but is also expressly to continue during all the term of the natural life of the daughter, with remainder to those who would be entitled to take if she survived her mother and husband, and died intestate, seised and possessed of the said premises. This presents the question, who would take the estate if the daughter died seised thereof and intestate, having survived her mother and husband? If she leaves issue, they will take ; and if she leaves no issue, then her surviving brothers and sisters, and the issue of any deceased will be entitled to take.

Opinion of Court below.

The cestui que trust has survived her mother and husband, and is still living. But it cannot be ascertained until her death who will be entitled to the corpus of the trust estate. If the remainder had been to those who would take had she died intestate, then it would be to her heirs generally, and by operation of the Rule in Shelley's Case, she would have taken an estate in fee. Such, however, is not the language in this will, and if either her mother or husband had survived her, they, upon her death, would have taken as her heirs under the intestate law; but as she survived them, a different class of persons will be entitled to the estate at her death. And they will take as purchasers under the will of the donor or testator, not derivatively from the cestui que trust under the intestate law. It would seem, therefore, that the trust should be maintained for their protection.

—The auditing judge accordingly held, citing Ralston v. Waln, 44 Pa. 279; Earp's App., 75 Pa. 119; Dodson v. Ball, 60 Pa. 492, and Bacon's App., 57 Pa. 509, that the trust must be sustained for the protection and benefit of the remainder-men, and awarded the balance, being the corpus of the estate, to the accountant, as trustee under the will.

Exceptions to this part of the adjudication, after argument, were overruled by the court, ASHMAN, J., filing an opinion in part as follows:

Under the two-fold capacity in which this trust was intended by the testator to operate, it is immaterial that only one of its functions should have come into play. One purpose was to protect the daughter against the control or the debts of her husband; but that was scarcely the paramount intent, because the daughter was neither married nor contemplating marriage when the will was written. The other purpose was to protect her against herself, and to preserve the estate unimpaired for the remainder-men. The trustees were specially directed to invest the personal estate, and they were as fully charged with the control of the real estate, by the direction to pay over the rents and profits. These duties were to continue during the life of the daughter, and that they rendered the trust an active one is shown by the decisions in Barnett's App., 46 Pa. 392, Bacon's App., 57 Pa. 504, Ashhurst's App., 77 Pa. 464.

Opinion of Court below.

In the last two of these cases, the trust was sought to be set aside, because the first takers had become discovert; but it was held that the trust continued, notwithstanding the discoverture. In Lightner's App., 11 W. N. 181, the trustee was ordered to make investments, to pay the income to the testator's daughter during life, and to convey the estate at her death to her heirs. The active duties which were involved in the trust compelled the vesting of the legal estate in the trustee, and, the daughter's interest, remaining equitable, was prevented from coalescing with the legal estate in remainder.

Under that authority, this trust could not be held to be executed, even if the gift over had been without qualification to " such persons as would be entitled to the same by the laws of the commonwealth," provided the daughter had died intestate; words which, in Dodson v. Ball, 60 Pa. 492, Yarnall's App., 70 Pa. 335, and Tucker's App., 72 Pa. 354, were said to be equivalent to heirs and next of kin. The gift, however, was only to the members of these classes who should remain after the mother and husband of the first taker had been excluded, and the persons so selected would necessarily take as purchasers. The fund is personalty; and in a gift of personal estate, the husband is an " heir " of his wife: Eby's App., 84 Pa. 241. See also Gibbons v. Fairlamb, 26 Pa. 217. The exceptions to the ruling of the auditing judge on this point are overruled.

And now, to wit, October 5, 1889, this cause having come on to be heard, and having been argued by counsel, it is ordered, adjudged, and decreed . . . . . that the balance of principal in the hands of the accountant is $12,282.67, which consists of $11,911.06 in securities, as stated in the account, and $371.61 in cash, and that the said balance is hereby awarded to the accountant as trustee under the will of the testator.

—Thereupon Amanda C. Kuntzleman, the cestui que trust, took this appeal, specifying that the court erred :

1. In holding that the trust in question was an active trust.

2. In holding that the parties, to take in remainder, take as purchasers.

3. In not awarding the corpus of the trust estate to Amanda C. Kuntzleman.

4. In awarding the corpus of the trust estate to the trustee.

*Mr. R. H. Neilson* (with him *Mr. W. D. Neilson*), for the appellant:

1. The only question raised by this appeal is whether the trust created by the will of Philip Dorney is an executed trust. The separate use trust for the appellant failed: Wells v. McCall, 64 Pa. 208; and, as the persons who will take in remainder are precisely the right heirs of the life-tenant, her husband and mother being dead, she claims the operation of the Rule in Shelley's Case. It would serve no good purpose to review the many cases upon the subject of active and passive trusts, decided since the announcement of the present policy of the law of Pennsylvania in Barnett's App., 46 Pa. 392. As to a spendthrift trust, there is nothing in this will upon which such a trust can be based: Ashhurst's App., 77 Pa. 464. Nor is there difficulty, in the light of the authorities, in solving the question whether this trust can be sustained as a trust to preserve the remainders. Assuming the life estate to be an equitable one, does the Rule in Shelley's Case apply?

2. In the gift of a remainder to "such persons as would be entitled under the intestate law," these words are equivalent to the word heirs: Dodson v. Ball, 60 Pa. 492; Williams's App., 83 Pa. 377; Norris v. Rawle, 16 W. N. 240. The exclusion of the life-tenant's husband from those entitled to take in remainder, did not narrow the line of descent, nor prevent the operation of the Rule in Shelley's Case: Yarnall's App., 70 Pa. 501; Tucker's App., 75 Pa. 354. Ralston v. Waln, 44 Pa. 279, relied on by the appellee, turns on the use of the words next of kin, or else it is at variance with Yarnall's Appeal. Besides, the decision was rested on Anderson v. Dawson, 15 Ves. 532, wherein Sir WILLIAM GRANT, in his opinion, says that a limitation to next of kin is a limitation to heirs of a particular class. Words of distributive modification have always prevented the application of the Rule in Shelley's Case in England: Greenwald v. Rothwell, 5 M. & G. 628; which is not the rule here: Physick's App., 50 Pa. 128. And see as to Anderson v. Dawson, the opinion of Mr. Justice AGNEW, in Dodson v. Ball, 60 Pa. 492.

3. The words creating the remainder in this will differ from those considered in Yarnall's Appeal, only in that the mother of the cestui que trust, as well as her husband, is excluded.

This can make no difference in the result now, as the mother is dead. Perhaps the trust should have been sustained during her lifetime, so as to prevent any share of the funds from going to her in case of the life-tenant's death, but any such purpose has now ceased. Notwithstanding the imposition of active duties upon the trustee, the courts will not sustain a trust when its object has failed : Megargee v. Naglee, 64 Pa. 216 ; Williams's App., 83 Pa. 377; Rea v. Trust Co., 16 W. N. 48; Ogden's App., 70 Pa. 501. The duties of the trustee, under this will, are far less active and discretionary than in Megargee v. Naglee, supra; Williams's App., supra ; and Tucker's App., 75 Pa. 354; yet in all those cases the trusts were held to be executed. The life-estate is therefore legal, and there is nothing to prevent its coalescing with the remainder and no conceivable reason for a different decision in this case from that in Williams's Appeal, where the will was almost identical with this one. It is the duty of the court to enforce the Rule in Shelley's Case : Bassett v. Hawk, 118 Pa. 94. Between descent and purchase, the law favors descent: 2 Bl. Com., 200; Waln's App., 4 Pa. 502 ; Carroll v. Burns, 108 Pa. 386. Watson's App., 125 Pa. 340, and Fowler's App., 125 Pa. 388, are in harmony with our position.

*Mr. George Tucker Bispham*, for the appellee :

The trust created by this will may be sustained upon two grounds :

1. The trust is active during the continuance of the life-estate, and therefore that estate is an equitable one, incapable of coalescing with the legal estate in remainder. The will, upon its face, prima facie imports an active trust, involving the performance of active duties by the trustee, apart from the circumstance that the limitation is for the sole and separate use of the testator's daughter: Barnett's App., 46 Pa. 392; Bacon's App., 57 Pa. 504. Ogden's App., 70 Pa. 501, cited by the appellant, does lay down the rule that incidental active duties will not necessarily keep a trust alive, if its main purpose falls. But this case is distinguished from Ogden's Appeal by two circumstances: (*a*) The express direction to invest and to perform active duties in the selection of securities for investment, in which respect the case resembles Lightner's App., 11 W. N.

181; and (*b*) the fact that the limitation to the first taker is expressly for life only: see opinion of Mr. Justice AGNEW in Ogden's Appeal.

2. The limitation over does not bring the gift within the Rule in Shelley's Case, even if the particular estate be considered a legal estate. The limitation is not to executors and administrators, which, so far as personalty is concerned, is the equivalent of the word heirs, in connection with realty: Anderson v. Dawson, 15 Ves. 537; Ralston v. Waln, 44 Pa. 279; nor is it even to those who would take under the intestate laws. It is to some of these only. Plainly, therefore, the rule of succession is changed. It is no answer to say that the husband and mother, who are excluded, are now dead. Suppose Mrs. Kuntzleman marries again. Whether any future husband would be entitled to take would depend upon whether the provisions of the will are carried out. But to look at the condition of things now, is to take too narrow a view. The death of the husband and mother in Mrs. Kuntzleman's lifetime is a mere accident which cannot alter the interpretation to be given to the will. Whether the limitation over is to take effect by way of purchase or not, is to be determined by the words used in the will and the circumstances as they existed at the death of the testator. This is the answer to Yarnall's App., 70 Pa. 335, in which there was no exclusion of the mother. That exclusion renders Williams's App., 83 Pa. 377, inapplicable also.

OPINION, MR. JUSTICE CLARK:

The will of the testator, Philip Dorney, was probated on the 16th of September, 1840; at that time his daughter, Amanda Cornelia, the appellant, was a child five years of age, of course unmarried and not contemplating marriage. She was first married to Craig, June 14, 1855; her husband died in November, 1864. She was afterwards married to Kuntzleman, and survived her second husband also.

The testator's will contained a clause as follows:

"And the remaining one full equal and undivided tenth part thereof unto the said George Miller, his heirs, executors, administrators, and assigns, in trust, nevertheless to place and continue the personal estate at interest on good landed security

or interest, or invest the same in some productive public funds, or loans, and to pay the interest and income thereof, and the rents, issues, and profits of the real estate, unto my said daughter, Amanda Cornelia Dorney, for her sole and separate use, upon her separate receipt, without the control or interference of any husband she may have or take, for and during all the term of her natural life; and, from immediately after the decease of my said daughter, Amanda Cornelia Dorney, then, in trust, to and for the only proper use, benefit, and behoof of such person, or persons, as would be entitled to the same by the laws of the commonwealth of Pennsylvania, if my said daughter had survived her mother, and husband, if any she may have, and died intestate, seised and possessed of the said premises, and for such estate and estates, as such person or persons would, in such case, be entitled by the laws aforesaid."

The appellant's contention is, that the whole purpose of the trust, created by this clause of the will, was a trust for coverture, or for the separate use of the testator's daughter, which fell for lack of a marriage, or a contemplated marriage, to support it; that as her mother and her husband are both dead, the parties to take, at the daughter's death, are her right heirs, and that by the Rule in Shelley's Case she has an absolute estate in the fund for distribution. The appellees, on the other hand, contend, first, that the trust is active during the continuance of the life-estate of Mrs. Kuntzleman; that her estate therefore is an equitable estate, whilst the estate to the heirs in remainder is legal, and that for that reason the former cannot coalesce with the latter; and, second, that, even if the particular estate be held to be a legal estate, the estate in remainder is limited in language which does not bring the gift within the rule.

It is conceded on all hands, that for the reasons already stated the trust cannot be sustained as a separate use, or as a trust for coverture, and the authorities are full and plain upon this point: Wells v. McCall, 64 Pa. 208; Ogden's App., 70 Pa. 501. Nor, apart from the purpose of the testator with respect to the remainder, can we discover any other object to be attained by the trust, than a separate use for his daughter. In the case of each of his sons, the income was to be "free from their debts," etc.; and, although the use of these words, per-

Opinion of the Court.

haps, was not essential to create a spendthrift trust, their omission in the clause quoted is significant in the ascertainment of his purpose with respect to his daughter.    There is nothing in this will to indicate the testator's intention to create a spendthrift trust; on the contrary, it is plain that his purpose was to create a trust for coverture.

Where an active trust is created to give effect to a well defined, lawful purpose of a testator, in relation to his family, the trust will be sustained, whether the cestui que trust be sui juris or not.    This was established in Barnett's App., 46 Pa. 392, overruling, in terms, Kuhn v. Newman, 26 Pa. 227, where a different doctrine had been declared, and the ruling in Barnett's Appeal has since been steadily maintained : See Earp's App., 75 Pa. 119, and cases there cited.    In these cases, however, the bequests and devises of income were to children for life, irrespective of coverture, and a clear purpose appeared to protect the corpus of the estate for the ultimate devisees.

But the cases cited, and many more in the same line and to the same effect, are clearly distinguishable from those in which the purpose of the testator is to create a trust for coverture. A trust for coverture is one of the well-settled instances, in the doctrine of special trusts, where the trust falls if there is no marriage, in fact or in contemplation, to support it, or where upon the husband's death coverture ceases.    And it is immaterial that the trust imposes active duties upon the trustee. These duties are only subsidiary to the main purpose : they are mere incidents or adjuncts to the trust; and, if the trust itself falls, these active duties are dispensed with ; they will not uphold the trust, they fall with it : Megargee v. Naglee, 64 Pa. 216 ; Yarnall's App., 70 Pa. 336 ; Ogden's App., 70 Pa. 501; Ashhurst's App., 77 Pa. 464; Williams's App., 83 Pa. 377.

But we think the testator's purpose, in part, was by means of this trust to protect the corpus of the estate for the parties entitled in remainder, and we are of opinion that the trust should be upheld in support of the remainder.    The bequest of the interest and income is expressly for life and not during coverture, and is of the income only, not of the corpus of the estate.    Those entitled in remainder are "such person or persons as would be entitled to the same by the laws of the com-

monwealth of Pennsylvania," if the daughter "had survived her mother and husband," and died intestate. The expression "such person or persons as would be entitled to the same by the laws of the commonwealth of Pennsylvania," may perhaps be taken to signify "heirs": Dodson v. Ball, 60 Pa. 492; Williams's App., 83 Pa. 377; and it may be assumed that the persons entitled under the words of the entire clause are such persons as, at the daughter's death, are her heirs-at-law, exclusive of her mother and her husband.

But, to bring the devise within the Rule in Shelley's Case, the limitation in remainder must be to the heirs in fee, or in tail, as a nomen collectivum for the whole line of inheritable blood. When the testator annexes words of explanation to heirs, or heirs of the body, as to heirs now living, etc., using the terms as mere descriptio personarum, or for the specific designation of individuals, a new inheritance is thereby grafted upon the heirs to whom the estate is given: 4 Kent Com., 221; and they will be assumed to take as purchasers. The Rule in Shelley's Case, when applied to real property, enlarges the life-estate into an inheritance. The heirs, in such case, therefore, take qua heirs, and it is not in the power of the testator to prescribe a different qualification to heirs, from what the law prescribes when they take in the character of heirs.

For these reasons, we are of opinion that the limitation over, in this case, does not bring the gift within the rule, even if the particular estate should be considered legal. The limitation is to some only of those who would take under the intestate law. The husband and the mother are expressly excluded. It is true they are both now deceased, but that circumstance can have no effect: the testator's intent must be ascertained from and his will construed according to the words of the will; and these are to be read in the light of the circumstances under which the will was written. The merely accidental fact that the husband and mother are both now dead, does not bear upon the testator's intent at the execution of the will, or determine its meaning when it took effect.

Yarnall's Appeal, supra, may perhaps be regarded as authority for the proposition that the exclusion of the husband does not narrow the line of descent, when the donor's intention was to create a trust for the separate use of the wife. Mr. Justice

AGNEW, delivering the opinion of the court in that case, said : " It is argued that the exclusion of the husbands of the daughters in the remainder clause narrows the line of descent.   But, clearly, this does not change the intent of the testatrix in this will, for it must be remembered that there were no husbands in existence, and that this so-called exclusion is an expression corresponding with the intent of the testatrix, which was to give the daughters separate estates, the effect of which would be to exclude the husbands."   Whilst this reasoning is not entirely clear, it is plain that it does not extend to the exclusion of the mother.

We are of opinion that the Rule in Shelley's Case has no application ; that the parties entitled at the death of the testator's daughter take by purchase, and the trust should be upheld to protect their rights.

> The decree of the Orphans' Court is affirmed, and the appeal dismissed at the cost of the appellant.