# Williams's Appeals.

1. The testator, by his will, devised his estate in trust, that the rents, profits
and income shall be received by his daughter during her life, not subject to
the control of her husband nor liable for his debts, with power of appointment
by will, and in default of appointment, in trust for her children and their
issue, if any, and in case of death without children, to her right heirs, author-
izing her at any time to revoke or change the trust created, and to make and
declare new trusts concerning the premises, and by a codicil declared it to
be his will that the trust and uses in regard to his daughter shall be irre-
vocable.    The auditor reported the trust void, and his report was confirmed
by the court below: *Held*, reversing, that the trust is an active trust.

2. When an active trust is created to give effect to a well-defined, lawful
purpose of a testator in relation to his family, the trust must be sustained,
whether the *cestui que trust* be *sui juris* or not.

3. Earp's Appeal, 25 P. F. Smith 111, followed and distinguished from Yar-
nall's Appeal, 20 P. F. Smith 335, and Ogden's Appeal, Id. 501.

4. The testatrix, by her will, devised one-third of her estate in trust to pay the

[Williams's Appeals.]

income to her sister (who is the daughter above mentioned) during her life, not subject to the control or the debts of her husband, with power of appointment by will, and in default of appointment, to such person to whom, under the intestate laws, the same would go, had she died seised in fee. The will was made during the life of the husband of the sister, the *cestui que trust.* The auditor reported, that as the husband had died, the trust must be considered as executed, and the court below confirmed this report: *Held,* affirming, that as the only purpose of the trust was protection against the husband during coverture, it failed by his death, and the trust for coverture having fallen, the *cestui que trust* had a legal life-estate with remainder to her heirs, and by the operation of the rule in Shelley's case, it coalesced and constituted a fee in her.

5. Yarnall's Appeal, 25 P. F. Smith 339, considered and followed.

January 30th 1877. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ. WILLIAMS, J., absent.

Appeals from the Orphans' Court of *Philadelphia county:* Of January Term 1877, No. 51, 52.

These were appeals of Jacob T. Williams from the decree of the court in the matter of the trust estates of Hannah W. Sterling.

The appellant, Jacob T. Williams, is the brother and trustee of said Hannah W. Sterling, under the wills of her father, Thomas Williams, and her sister, Mary Williams. The two trust estates were blended together for convenience by the auditor and by the court below; a special appeal, however, was taken out in each case.

The appellant, as trustee in said two estates, filed his account, and the same was referred to Edward Hopper, Esq., as auditor. Pending the audit, Hannah W. Sterling, the *cestui que trust,* filed her petition in the Orphans' Court for the city and county of Philadelphia, praying the said court "to declare that the trusts for the petitioner, under the last will and codicil of the said Thomas Williams, and the last will of the said Mary Williams, have all been executed, and to direct the said Jacob T. Williams, surviving trustee as aforesaid, to pay and hand over absolutely to your petitioner, all the moneys and other assets belonging to said trusts, and each of them now in his hands."

This petition was likewise referred to Mr. Hopper to report upon. The auditor's report hereunto annexed, fully sets out the clauses of the two wills, which give rise to the questions presented for the consideration of the court, together with the opinion of the auditor thereon, which is given at length, in view of the importance of the questions involved and the ability with which they are discussed:—

"The most important question presented for the decision of the auditor, and which is presented by the petition referred to him, in conjunction with the account, arises in relation to the devise of Thomas Williams to his daughter, Hannah W. Sterling, and the devise of Mary Williams to her sister, the said Hannah W. Sterling.

"These estates are separate and distinct, and it would perhaps have been the better way for the trustee to have kept the accounts

separated from each other; but as the estates for life were the same, and the remainders over were limited in substantially the same manner, the trustee blended the accounts. The devises will be considered separately, and from the conclusion to which the auditor arrives, the manner in which the accounts have been kept occasions no difficulty, as far as it affects the distribution of the estates.

" First. As to the question presented under the will of Thomas Williams.

" The clauses of the will under which the question arises are as follows:—

" ' One other of the said seven full equal parts or shares, in which shall be included all that my messuage or tenement and lot or piece of ground thereunto belonging, situate No. 73, on the north side of Race or Sassafras street, between Delaware Second and Third streets in the said city, with the appurtenances, they shall allot and deliver, and I do hereby give, devise and bequeath the same unto my said sons, Samuel Williams, Thomas R. Williams and Jacob T. Williams, to hold the same and every part thereof with the appurtenances unto them my said sons Samuel Williams, Thomas R. Williams and Jacob T. Williams, and the survivors or survivor of them, and the heirs, executors, administrators and assigns of the survivor of them, in trust, nevertheless, to and for the following uses, intents and purposes: that is to say, in trust to let and demise the real estate, and put and keep out at interest, on some good real estate security, the personal estate forming such share, and to collect and pay over all the rents, income, interest and dividends thereof, from time to time, when and as the same shall be got in and received, unto my said daughter, Hannah Williams, for and during all the term of her natural life, so that the same or any part thereof shall not be under the control of any husband she may have or take, or be in any way or manner whatever subject to or liable for any of his contracts, debts or engagements. And from and after the decease of her, my said daughter Hannah, then in trust as regards the said last-mentioned seventh part or share to and for the only proper use and behoof of such person and persons, uses, intents and purposes as she my said daughter Hannah by her last will and testament in writing or by any writing in the nature of or purporting to be her last will and testament, to be executed by her in the presence of two or more credible witnesses, notwithstanding any coverture, or whether she be covert or sole, shall nominate, direct, limit and appoint, and for want or in default of such nomination, direction and appointment, then in trust, after the decease of her, my said daughter Hannah, to and for the only proper use and behoof of all and every the child and children which she may leave, and the lawful issue of any of them who may then be deceased, having left such issue, their several and respective heirs,

executors, administrators and assigns, in equal shares as tenants in common for ever, such issue of any deceased child or children of her, my said daughter, taking, however, and only receiving such part or share thereof as his, her or their deceased parent or parents would have had and taken had he, she or they been then living, and in case of the decease of her, my said daughter Hannah, without leaving any child or children, or the issue of any deceased child or children her surviving, and without having made any last will and testament as aforesaid, then to and for the only proper use and behoof of the right heir or heirs (under the then existing laws of the Commonwealth of Pennsylvania) of her, my said daughter Hannah, his, her or their heirs, executors, administrators and assigns for ever, if more than one person in equal shares as' tenants in common : Provided always, nevertheless, that it shall and may be lawful for my said daughter Hannah Williams, notwithstanding any coverture, or whether she be covert or sole, at any time during her natural life, to alter, revoke, change and make absolutely null and void all or any of the trusts hereby declared and created, and to make and declare such new and other uses and trusts of and concerning the premises as she may see fit and proper ; and provided, also, that it shall and may be lawful for the said Samuel Williams, Thomas R. Williams and Jacob T. Williams, and the survivors and survivor of them, and the heirs and assigns of the survivor of them, by and with the written consent and approbation of my said daughter Hannah, notwithstanding any coverture, or whether she be covert or sole, at any time during her natural life, to grant, bargain, sell and absolutely dispose of all or any of the real estate hereby devised in trust for her, my said daughter Hannah, unto any person or persons whomsoever, and upon sale thereof by good and sufficient deed or deeds, conveyances, or other assurances in the law to grant and convey and assure the same to the purchaser or purchasers in fee simple, and the money arising from such sale or sales thereof to again invest in other real estate, and hold the same in trust to and for the same and like uses, intents and purposes, and under the same and like provisos and limitations as are hereinabove set forth and declared of and concerning the premises so devised to them in trust for my said daughter Hannah, and to and for no other use, intent and purpose whatsoever.'

" ' Codicil No. 2. Whereas, in and by my last will and testament, dated the 26th day of the third month, one thousand eight hundred and thirty-eight, the following proviso is contained in relation to my daughter Hannah Williams's trust : " Provided, that it shall and may be lawful for my said daughter Hannah Williams, notwithstanding any coverture or whether she be covert or sole, at any time during her natural life, to alter, revoke, change and make absolutely null and void all or any of the trusts hereby declared and created, and to make and declare such new and other uses and trusts of and

concerning the premises as she may see fit and proper." Now, I do, by this my writing (which I declare to be a codicil to my said will and testament, and direct to be taken as part thereof), revoke, annul and make void all the said above-recited proviso or power of revocation so far as relates to my said daughter Hannah, and do declare it to be my will, that the uses and trusts in my said will and testament in regard to my said daughter Hannah shall be and remain irrevocable, anything therein contained to the contrary notwithstanding. And, further, it is my will that all the personal property devised to Samuel Williams, Thomas R. Williams and Jacob T. Williams, in trust for the use of my daughter Hannah, be, as much as practicable, invested in real estate, such as in their opinion will be best, and the net income thereof collected and paid over unto her. And I do hereby ratify and confirm my said will and testament and codicil heretofore made and annexed thereto in all other respects save as above.'

"Before coming to a decision in this case the auditor awaited the decision of the Supreme Court in Earp v. Phillips, and some later cases, in the hope (generally felt by the bar) that out of the numerous discordant cases some distinctive principle might be deduced which would serve as a guide in the construction of trusts created by will. Such a guide was sadly needed. All those principles which since the statute of uses had grown from numberless decisions, and governed what are known as equitable estates, were in Pennsylvania overruled in 1856.

"Within the succeeding twenty years there has been a conflict of decisions upon the subject which has occasioned much perplexity to the bar. In the numerous cases within that period there have been a number of decisions for and against what used to be the well-understood doctrine of trusts. What the present learned chief justice has indicated as the current and violent counter-current of cases on the subject has been reviewed by him in Dodson v. Ball, 10 P. F. Smith 496, and he there asserted that 'the result of these conflicting principles and authorities is, that it is difficult to determine cases lying along the border.'

"In the recent case of Huber's Appeal (Gaul's Estate), 2 Weekly Notes 582, the learned Justice WOODWARD speaks of 'the long line of authorities bearing upon this perplexed and intricate branch of the law of Pennsylvania.' He designates the currents of decision bearing upon the subject, as 'cross, counter, and direct.'

"The decision or opinion in Earp v. Phillips has failed to aid the auditor, so far as the annunciation of any distinctive principle of construction or interpretation would have done so. No such principle has been declared, nor can any be extracted from the opinion of the court in that case. In that—the last case—as if to preclude the attempt to discern any such guide, the court say, 'It is proper to remark, that the decision upon one will rarely ever forms a pre-

cedent for a decision upon another; even the same words in one are often interpreted differently in another. Instances of these various readings will be found in Yarnall's Appeal. Hence that which may appear contrariety of decision is simply diversity in the testator's intention.'

"As an officer of a court, subordinate to the Supreme Court, the auditor considers his duty best performed by comparing the cases before him with the expression of the latest view of the Supreme Court, in stating the result of such comparison, and in having thus moved the parties one stage further on the road through which every question of supposed trust for the last twenty years has travelled, and still must travel, to the Supreme Court.

"In Earp *v.* Phillips the court deemed it advisable to explain the two cases of Yarnall's Appeal and Ogden's Appeal, both decided two years before; and to distinguish them from the views contended for by the late Chief Justice THOMPSON (of counsel in Earp *v.* Phillips), who had relied upon his understanding of those cases in the decision of which he had concurred while on the bench. In the determination of the question now before the auditor, he will refer to these three cases only, and to the explanation of the first two contained in the last.

"If the estate devised to the testator's daughter Hannah is an equitable one, it is so by virtue of the proviso of the will already cited and of the codicil No. 2. The purpose for which the testator devised one-seventh of his estate to his three sons, in trust for his daughter Hannah, is expressly stated to be 'so that the same or any part thereof shall not be under the control of any husband she may have or take, or be in any way or manner subject to or liable for any of his contracts, debts or engagements.'

"No other purpose is stated and none other can be implied. The trust created, from the character of the duties imposed upon the trustees, is a special one, and created for the benefit and security of Hannah's property in the natural expectation of her coverture. It was admitted as a fact before the auditor, however, that at the date of the will, the said Hannah was not in immediate contemplation of marriage. Under similar circumstances a special trust was declared voidable in Yarnall's Appeal, and Wells *v.* McCall (cases referred to as still controlling authorities in Earp *v.* Phillips), and the auditor decides that the special trust created by Thomas Williams, for his daughter Hannah, is also voidable, and upon the application of the said Hannah, now referred to him, actually void.

"It must be obvious, from an examination of the will of Mr. Earp (in Earp *v.* Phillips), that so far as the trust related to his daughter, its purpose was—as is the purpose of every father with reference to his daughters in such cases—to guard her interest in the event of coverture; yet this was not said by the testator (Earp). In no other respect did the devise in Earp *v.* Phillips differ from that in

Yarnall's Appeal, in which the purpose of the special trust was in terms asserted.

" In the latter case the special trust was declared void, and in the former it was held valid. And the very fact of the assertion in the one case, and the absence of such assertion in the other, is one of the grounds on which the court distinguished the two cases. The auditor is therefore forced to the .conclusion that the purpose of the testator, Thomas Williams, would not have affected the special trust created, had it not been declared, and that its declaration rendered at once the special trust invalid. It is true that the court also distinguished Earp v. Phillips from Yarnall's Appeal, by saying that in the former case ' the corpus of the estate is fully and distinctly vested in the trustees and put under their control,' which was not done in the latter, but the court, in Yarnall's Appeal, 20 P. F. Smith 339, held that it had been done, saying, ' It is clear that as to the daughters, the corpus of the estate vested in the trustee, and he was to pay over the interest and income to the daughters of Mrs. Ellis during life.' These words form an important part of the opinion of the learned court that uttered them, and the auditor has felt not only at liberty, but that it is his duty, to disregard the attempted distinction between the cases on the ground last stated. In the will of Thomas Williams, it is true the devise to the trustees is of the corpus, but as this was decided to be the character of the will of Hannah A. Ellis (Yarnall's Appeal), the decision in the latter case is followed by the auditor in the case now before him.

" By codicil No. 2, the power of revocation is taken away from the cestui que trust, and the testator declares that the trust created by the will shall be irrevocable, and that all the personal property devised in trust shall be as much as possible invested in real estate. The trust created by the will is by the codicil neither modified, nor is the declared purpose for which it was made affected for good or ill. No doubt the purpose of the codicil was to take from the daughter the power which an unfortunate or speculative husband might prompt her to exercise; in effect, to further shield the property from the chief peril to which the continued experience of generations of lawyers has shown such estates to be exposed, and in this way to add strength to the provisions of the will. It is in the expression of the will, unmodified by the codicil, however, that the weakness inheres. There the testator expressed the purpose for which he called the machinery of a supposed trust into being, and thereby, as has been shown by reference to Earp v. Phillips, he defeated the sole purpose of his act.

" The devise is therefore a legal one to Hannah of the income for life, and this, in Pennsylvania, is a devise for life of the estate out of which the income issues: Wilson v. McKeehan, 3 P. F. Smith 79. The estate created by the will of Thomas Williams is consequently a legal estate for life in his daughter, with a legal remain-

der to her children, and in default of children, to her right heirs. It seems scarcely necessary to show what no one will doubt, that by the operation of the rule in Shelley's case, the latter estate coalesces with and enlarges the former to a fee simple, and the auditor decides that logically following the cases of Earp *v.* Phillips and Yarnall's Appeal, the estate created by the will of Thomas Williams for the benefit of his daughter Hannah is a fee simple, in one-seventh part of the testator's estate.

"Another view of the case may be taken, which may perhaps relieve it from the difficulties presented in the previous discussion.

"It is alleged to be a trust for coverture or for protection against coverture.

"In support of this allegation it is shown that Thomas Williams, the testator, made the codicil No. 2, after the marriage of his daughter Hannah. When the testator's will was made there was no engagement, no marriage in immediate contemplation. After the marriage this codicil was made, by which the power of revocation was annulled. This was done in reference to the trust for the said Hannah, and not with regard to that for the other daughters. This would seem to indicate that the intention of the testator was to make it a trust for protection against coverture; and if that view is correct, and certainly it is not without plausibility, the husband of Hannah having died, the trust must be considered as executed, and the prayer of the petitioner granted.

"As to the devise under the will of Mary Williams, the clause under which the question arises, is as follows, to wit:—

"'Item: All the rest, residue and remainder of my estate, real, personal and mixed, whatsoever and wheresoever (excepting only that part or portion of the real and personal estate of my late father, Thomas Williams, deceased, which I may receive or be entitled to on the division of said estate, and which I have willed as hereinafter expressed), I give, devise and bequeath as follows:—

"'* * * One full equal third part thereof unto my said brothers, Thomas R. Williams and Jacob T. Williams, and the survivor of them, and the heirs, executors, administrators and assigns of such survivor for ever, to hold the said last-mentioned one-third part of my said estate in trust for the following uses and purposes, that is to say: to demise and let the real estate, and to put or place and keep out on mortgage security at interest, the personal property and the proceeds from the sales of the said real estate, or with the approbation in writing, under her own hand, of my sister, Hannah W. Sterling, wife of James S. Sterling, to invest the same in the purchase of ground-rents or other real estate in the city and county of Philadelphia, or of stocks, and to collect and receive the rents, interest and income of the said trust estate and property and investments thereof, and to pay over the same rents, interest and income, when and as received, unto my said sister, Hannah W. Sterling, for

her own sole and separate use and support during her natural life, for which her own receipts, under her own hand, notwithstanding her present or future coverture, or whether she be covert or sole, shall be good and valid discharges, and so that the same or any part thereof shall not be in the power, nor subject to the debts, control or engagements of her present or any future husband. And upon the decease of the said Hannah W. Sterling, then to hold, transfer and pay over the said trust estate and property and the investments thereof unto and to the use of such person or persons and in such way and manner as she, by her last will and testament in writing, or any writing in the nature thereof, to be by her signed and intended as such, notwithstanding her present or future coverture, or whether she be covert or sole, shall direct and appoint —and in ·default of such will or appointment, then to hold, transfer and pay over the same unto such person or persons in such shares, and for such estates and interests therein, to whom and as the same would go had she died seised thereof in fee, and possessed of the said trust estates and property and investments thereof agreeably to the then existing intestate laws of the state of Pennsylvania. And it is my will that the said trustees or the survivor of them, and the heirs, executors, administrators and assigns of such survivor, shall, and I give them full power and authority at any time or times, during the life of my said sister, Hannah W. Sterling, with her consent, to be testified by her becoming a party to the deed or deeds of conveyance, therefore to sell, assign and dispose of all or any part of the said trust real estate, and convey the same unto the purchaser or purchasers thereof in fee simple, without liability on the part of the purchaser, for any misapplication of the purchase-money. And the proceeds from such sale or sales shall be put out and invested in the city or county of Philadelphia, in mortgage security at interest or in the purchase of ground-rents or other real estate, or stock or stocks, and the investments thereof to be held by the said trustees in the manner and for the uses´and purposes and under the same powers as are hereinbefore set forth and expressed. * * *

"'* * * Item: As regards that part of my estate, real, personal and mixed, which I am entitled to under the will of my said father, when and as soon as a final partition thereof shall be made, I give, devise and bequeath the same as follows:— * * *

"'One full equal fifth part thereof unto my said brothers, Thomas R. Williams and Jacob T. Williams, and the survivor of them, and the heirs, executors, administrators of such survivor for ever, to hold the said last-mentioned one-fifth part thereof in trust for the like and same uses, intents and purposes, and under the same powers and limitations in all respects as are hereinbefore specified and declared concerning the one-third of my residuary estate (excepting as before excepted), devised to them in trust for

the use of my said sister, Hannah W. Sterling, and in the like manner, as though the same trusts were here at large repeated.'

"After the discussion upon the devise of Thomas Williams, little need be said upon the question raised by the will of Mary Williams. This will was made after the marriage of the said Hannah to Sterling, and would seem to be a trust for protection against coverture. Under the ruling in Yarnall's Appeal, and in other cases, it would seem to be an executed trust. In one aspect it is not so strong a case for the maintenance of the trust. In Yarnall's Appeal, the husband of the tenant for life was excluded. Here no such exclusion was attempted. The statutory canon of descent is adopted by the will in case of default of testamentary disposition. The trust, since the death of the husband of Hannah W. Sterling, must be considered as executed, and the auditor so decides."

The exceptions filed to this report were dismissed by the Orphans' Court, and the report confirmed, Dwight, J., in an opinion, after some observations upon the character of the two trusts, continuing as follows:—

"It is not necessary to copy the clauses of the wills discussed in Ogden's Appeal, 20 P. F. Smith 501, and Yarnall's Appeal, Id. 335. They are substantially identical with the provisions of the two wills now before the court. In each of those cases the Supreme Court decided that the trust was for coverture only, and fell, because neither of the *cestui que trusts* contemplated marriage. The trust having fallen, the life-estate and the remainder united under the rule in Shelley's case, and the *cestui que trusts* each took a fee.

"In Earp's Appeal, 25 P. F. Smith 119, there was not a trust for coverture, but for life; and in Ashhurst's Appeal, 27 P. F. Smith 464, there was a trust both for coverture and for life. In each case the trust for life, as the paramount and controlling aim of the founder, was regarded. But in Yarnall's Appeal and Ogden's Appeal the life feature of the trust was ancillary to the trust for coverture, which was the prime, the only intention of the testators. It is this diversity in intention which required the life-estate in the two former to be kept separate as an equitable estate from the legal remainder. But the trust for coverture in the latter falling, the estate of the *cestui que trust* becomes legal, and thus can coalesce with the remainder under the rule in Shelley's case.

"In Megargee v. Naglee, 14 P. F. Smith 216, there was a trust for coverture, with power of testamentary disposition, and remainder to the use of the *cestui que trust's* heirs and legal representatives. Her husband died. It was held that the estate became executed in the *cestui que trust*, and it was decreed that the trustees should convey the legal estate to her.

"These cases, as we view them, sustain the report of the auditor. We think that the trust for coverture under each of the wills before

us has fallen, and that the fee of the realty and the absolute property of the personalty, constituting the *corpus* of each trust, are in Mrs. Sterling."

From this decree two appeals were taken, and the assignments of error were that the court erred in declaring the trust under both wills executed, and that the estate to Mrs. Sterling under the will of her father was a fee simple.

*William C. Hannis*, for appellant.—To use the language of Chief Justice AGNEW in Earp's Appeal, 25 P. F. Smith 119, " There are four things to be noticed in this will that clearly distinguish it from Yarnall's Appeal, 20 P. F. Smith 335, and Ogden's Appeal, Id. 501. The *corpus* of the estate is fully and distinctly invested in the trustees, and put under their control. The devise to Hannah Williams is only of the *income*. Her estate in the income is only for *life*. The *principal* of the estate is devised and bequeathed to those who are named in remainder. Here is plainly an active, operative trust." ·

In Dodson v. Ball, 10 P. F. Smith 492, Judge AGNEW again says, " The rule laid down is, that where an estate for life only is given, followed by a general power of appointment, and on failure to appoint, to children or to special heirs, the power to appoint will not enlarge the estate of the *cestui que trust* to a fee, and on a failure to appoint, the children or special donees in remainder take by purchase from the donor, and not by way of limitation as heirs of the *cestui que trust:*" Huber's Appeal, 30 P. F. Smith 348 ; Ash's Appeal, Id. 497 ; Phillips's Appeal, Id. 472.

It follows that Hannah W. Sterling has but an equitable estate for life ; that the legal estate is in her trustees for her life, and after her death is in the persons designated as remaindermen by the will of her father. The life-tenant having but an equitable estate, and those in remainder a legal estate, the rule in Shelley's case has no applicability : Bacon's Appeal, 7 P. F. Smith 504.

In both of the wills in this case the provision in regard to coverture is precisely the same as that in Ashhurst's Appeal, 27 P. F. Smith 464, and the distinction which SHARSWOOD, J., draws between that and the other decided cases on this point will apply with the same force here.

*N. H. Sharpless*, for the appellee, submitted no paper-book and made no argument.

Chief Justice AGNEW delivered the opinion of the court, May 7th 1877.

It is to be regretted that these two trusts have been blended in the proceeding below. To this we must attribute the remarkable confusion, by the learned auditor and the court, of two trusts so

different from each other in marked characteristics. It seems the report awaited the decision in Earp's Appeal, 25 P. F. Smith 119, but the learned auditor thought it afforded no guide; quoting that sentence in the opinion in which it is said the interpretation of the language of wills must vary with the intention of the testator, as " precluding the attempt to discern any such guide." The criticism has the merit of novelty, as it has always been supposed that the intention of a testator is the polar star to guide to the meaning of his language, and there is no procrustean rule on which words can be stretched to make them always fit certain legal results, whether so intended or not. Such a rule might suit city scriveners where wills follow given formulas, but never could be tolerated in those parts of the state where ignorant men draw wills, a class which far outnumbers the former. No greater outrage upon the rights of dying men could be committed than to defeat their just intentions by rules which make words and not the sense the guide of interpretation.

It is to be regretted that the learned court and auditor found no guide in Earp's Appeal, as its principle is in a greater degree applicable to the trust under Thomas Williams's will. That principle had been announced in Barnett's Appeal, 10 Wright 392, and has been repeatedly re-announced: Dodson v. Ball, 10 P. F. Smith 496–7; Wells v. McCall, 14 Id. 212; Yarnall's Appeal, 20 Id. 339; Ogden's Appeal, Id. 507; Ashhurst's Appeal, 27 Id. 464. The principle is that when an active trust is created to give effect to a well-defined lawful purpose of a testator in relation to his family the trust must be sustained whether the *cestui que trust* be *sui juris* or not.

In Earp's Appeal the *corpus* of the entire estate was vested in the trustees with active duties. To the three children, Hannah, Anna and George, the *income* only for *life* was given, without reference to coverture, as the specific purpose of the testator to be guarded against. A power of appointment by will was conferred, but this, it has been decided repeatedly, does not enlarge the precedent life-estate: Dodson v. Ball, *supra*, and authorities there cited; Yarnell's Appeal, *supra;* Ashhurst's Appeal, *supra*. Upon a failure to appoint, the *entire* estate was then to be held in trust for those who would take under the intestate law as the heirs of the three *cestuis que trust*. Thus the trust was active; the entire *corpus* was to be kept in trust to execute the ultimate purpose of the testator; the three children were entitled to an equitable estate in the income only for life, and not for coverture. The remainder in the right of the three children was a legal estate, the active duties of the trustees ceasing at the death of the life-tenants and the trust being then executed: Bacon's Appeal, 7 P. F. Smith 512; Rife v. Geyer, 9 Id. 393.

The testator had a lawful purpose to be performed, to wit: to

protect his estate from all danger of loss during the lives of his three children, not from husbands merely, for George was in the same category with Hannah and Anna, and then to carry the estate unbroken over to the children of the *cestui que trust*, for in the course of nature he had reason to believe they would be the heirs. The rule in Shelley's case, therefore, had no place in the case, for the life-estate was equitable and the remainder legal. Earp's Appeal was followed by Ashhurst's Appeal, 27 P. F. Smith 464, in which Justice SHARSWOOD very clearly develops the character of the former, and winds up his statement thus : " It was not a case in which the entire equitable fee or absolute estate was in the beneficiary, when the continuance of the trust is no longer necessary, and ought, therefore, to end at the volition of the *cestui que trust*."

Now, if we examine the will of Thomas Williams, we shall find that it is a clearer case for the application of a principle which preserves an active trust to fulfil the purpose of the testator than either Earp's or Ashhurst's trusts. He gave the entire *corpus* of the estate to trustees, with active duties to lease the realty and put out the personalty upon real security, and to collect the rents and income and pay the same to Hannah Williams for life, and so that it should not be liable to the control or debts of her husband. Had the trust stopped here, it might have been argued with force that it was intended to protect against coverture only. But, after providing for a power of appointment by will, which we have seen does not enlarge the life-estate, the will proceeds in these words: " and for want or in default of such nomination, direction or appointment, then in trust after the decease of her, my said daughter Hannah, to and for the only proper use and behoof of all and every *the child or children which she may leave*, and the lawful issue of any of them, who may *then* be deceased, having left such issue, their several and respective heirs, executors, administrators and assigns, in equal shares as tenants in common, such issue of any deceased child or children of her, my said daughter, taking and only receiving such part or share thereof as his, her or their deceased parent or parents would have had and taken had he, she or they been then living." This is followed by a provision, in case of Hannah's death without leaving any child or children or the issue of deceased child or children, that the estate shall go over to the right heir or heirs of Hannah. Thus between the life-estate of Hannah and the contingent fee given to her right heirs (that is, the collaterals), is interposed an estate in fee given to her children, who take as purchasers from the testator, and not by inheritance from her. The devise and bequest to the children, their heirs, legal representatives and assigns are so clear and well defined their purpose and character admit of no dispute. During Hannah's lifetime the possibility of children continues, so that her life-estate and the ultimate devise over to her collateral heirs cannot coalesce. That child or children

in such a case are words of purchase and not of limitation admits of no denial: Walker *v.* Milligan, 9 Wright 178; Taylor *v.* Taylor, 13 P. F. Smith 483–4; Haldeman *v.* Haldeman, 4 Wright 35–6; Yarnall's Appeal, 20 P. F. Smith 341.

The difference between Earp's will and the wills in Yarnall's and Ogden's Appeals, 20 P. F. Smith 501, was so clearly pointed out in the opinion in Earp's Appeal it was supposed no one would fail to perceive it. In the former the bequest was to children of income only for life, irrespective of coverture, and a clear purpose appeared to protect the *corpus* or entire estate for the ultimate devises and bequests of the testator. In the latter the intent of the testators, as ascertained, was to vest the entire estate in fee, in one case, and vested in the other in the beneficiaries, and the trust was intended only as a protection during coverture. The trusts for coverture having fallen and no other useful and lawful purpose appearing, the trusts became executed, and the life-estate legal, as well as the remainder, and they coalesced under the rule in Shelley's case. In the trust under the will of Thomas Williams the devise and bequest to Hannah's children as purchasers cannot be squeezed out between the life-estate and the contingent devise over to the collateral heirs of Hannah

The trust under the will of Mary Williams stands on a different footing. In it the only purpose appearing is a protection against the husband of Hannah W. Sterling during coverture. It is, therefore, governed by the principles stated in Yarnall's Appeal, *supra.* There the trust never took effect—here it failed by the death of the husband. The result is the same, however, the trust becoming executed. See the authorities collected in Megargee *v.* Naglee, 14 P. F. Smith 218, and in Yarnall's Appeal, *supra*, 339. In each case the trust is of the income for life, but in neither is any purpose of protection, except for coverture, discernible, while the estate, by the terms of the trust, vests on the failure to appoint in the same persons who constitute the heirs under the intestate law. Hence the trust for coverture having fallen, Hannah W. Sterling has a legal life-estate with a remainder to her heirs, and by the operation of the rule in Shelley's case the two estates meet together and constitute a fee in her.

This rule is not a technicality, as is shown in Yarnall's Appeal, but is founded in the nature of things, and the very purpose of the testator. It is not used to determine the meaning of a will, but its operation, when the meaning has been ascertained by the ordinary rules of interpretation. See citations from Fearne on Remainders, and Hileman *v.* Bonslaugh, 1 Harris 344. Hence when it is ascertained by interpretation that a testator has given a "life-estate to one, and a remainder of the same quality to the heirs of the same person, the estates necessarily close together, and form one estate of inheritance in the so-called life-tenant. For as it is

said in Yarnall's Appeal, 342–3 : " The remainder being limited to his heirs, he (the life-tenant) necessarily becomes the stirps or root of a line of unknown persons, not individuated by the will, and yet dependent on him as their source.    They spring into recognition only at his death, for *nemo est hæres viventis*.    In other words, they come at the bidding of the law, and not of the testator, who merely adopts them as the law turns them up in the furrow of descent.    He whō, at the date of the will, might have appeared to be the heir, by marriage, birth or death, may not be the heir when the will takes effect.    In the very logic of the succession, the life estate, therefore, incorporates with the inheritance, because of the failure of the testator to designate any other than the legal line of descent.    In short, he *calls* the devisee a tenant for life, yet vests the fee in him.    This being the intent of the testator, it is immaterial in the will whether he describes the line of descent by a word of art, or a periphrasis, meaning the same thing."

The difficulty met in Yarnall's Appeal and Ogden's Appeal was in determining the true intent of the testators, not in the application of the proper principles.    These were clear when the intent was discovered.    Two important principles were re-affirmed in those cases.    They had been established before.    They were:—

1. That an active trust having no longer a proper object to serve will cease, when its only purpose has come to an end, and this is always so when an estate of inheritance or an absolute estate is put in trust for coverture merely.    See authorities collected in McGargee *v.* Naglee, 14 P. F. Smith 216.

2. That when a testator uses words intended to designate an entire line of descent, either lineal, or lineal and collateral, as an ultimate limitation of the trust, the periphrasis will be considered as equivalent to the words, " heirs of the body," or " heirs," as the case may be, and afford a ground for the coalescing of the life estate and the remainder, if of the same quality, thus creating a fee tail or a fee in analogy to the rule in Shelley's case.

As these appeals stand before us, so much of the decree of the Orphans' Court as relates to the trust in the will of Thomas Williams, is reversed, and the record is ordered to be remitted with a *procedendo* in accordance with this opinion.    So much of the decree as relates to the trust under the will of Mary Williams, is affirmed with costs to be paid out of the estate, and the appeal as to this trust is dismissed.