Thaw Estate.

Argued November 12, 1948. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and FINE, JJ.

*Edward G. Bothwell,* First Assistant County Solicitor, with him *Nathaniel K. Beck,* County Solicitor and *Wilbur C. Douglass,* Assistant County Solicitor, for Allegheny County, appellant.

*Oscar G. Peterson,* with him *Mortimer B. Lesher,* for School District of Pittsburgh, appellant.

*J. F. McKenna, Jr.,* Assistant City Solicitor, with him *Anne X. Alpern,* City Solicitor, for City of Pittsburg, appellant.

*James S. Crawford,* with him *James Wilson Crawford* and *Patterson, Crawford, Arensburg & Dunn,* for appellees.

OPINION BY RHODES, P. J., January 14, 1949:

These appeals are from the final decree of the Orphans' Court of Allegheny County sustaining exceptions to the schedule of distribution on the sixth and final account of the Fidelity Trust Company, trustee under the will of William Thaw, deceased, and disallowing claims of the School District of Pittsburgh, the County of Allegheny, and the City of Pittsburgh for personal property taxes against the trust estate.

The question presented by the appellants is whether a resident testamentary trustee, which, upon the death of the life beneficiary, is in process of winding up the trust and making distribution to the remaindermen, is liable for a tax on the undistributed securities in its possession.

Accountant contends that it is not an active trustee, but a mere custodian of the trust securities for the real owners, and consequently is not liable for the personal property taxes sought to be imposed.

486

A tax was claimed by the County of Allegheny by virtue of the Act of June 17, 1913, P. L. 507, § 1, as last amended by the Act of June 28, 1947, P. L. 1008, § 1, 72 PS § 4821, which, in so far as relevant, provides as follows: "All personal property of the classes hereinafter enumerated . . . held . . . by such resident . . . as active trustee, agent, attorney-in-fact, or in any other capacity, . . . for the use, benefit, or advantage of any other person . . . is hereby made taxable . . . and no failure to assess or return the same shall discharge such . . . holder thereof; from liability therefor; . . . [and] corporations . . . holding such securities as trustees, executors, administrators, guardians, or in any other manner, except as mere custodian for the real owner, . . . shall . . . pay the tax . . . as in the case of individuals." The phrase "except as mere custodian for the real owner" was first incorporated into the Act by the Amendment of June 28, 1947, P. L. 1008.

The tax levied by the City of Pittsburgh was imposed by ordinance No. 486, approved December 1, 1947. Act of June 25, 1947, P. L. 1145, 53 PS § 2015.1 et seq. The language of the City's ordinance is substantially identical with, and is expressly based upon, the Personal Property Tax Act of 1913, as amended, 72 PS § 4821.

The School District of Pittsburgh levied and assessed its tax by resolution adopted pursuant to the authority of Act No. 319, approved June 20, 1947, P. L. 733, 24 PS § 581.1 et seq.[1] The language of the applicable provisions of the Acts here involved is identical except that the Act creating authority for the School District to levy the tax, 24 PS § 581.2, does not contain the phrase "except as mere custodian for the real owner." Cf. *Girard Trust Company, Trustee's Appeal*, 333 Pa. 129, 3 A. 2d 252. This omission, as the auditing judge pointed

---

[1] See *Mikell v. Philadelphia School District*, 359 Pa. 113, 58 A. 2d 339.

out, is not material, and the validity of the three tax claims is determined by the language quoted from the Personal Property Tax Act of 1913, as amended, 72 PS § 4821. It is conceded that taxability of the trust is to be determined as of January 1, 1948.

William Thaw died testate on August 17, 1889, a resident of Pittsburgh. His last will and testament, dated July 5, 1889, was probated in Allegheny County on September 2, 1889. It created a testamentary trust in which his son, Henry Kendall Thaw, was made a life beneficiary, and appointed the Fidelity Trust Company as trustee. The son was given a general testamentary power of appointment to dispose of the corpus of the trust. Henry Kendall Thaw died on February 22, 1947, a resident of the State of New York; and, by his last will and testament probated in Bolton County, New York, he exercised the power of appointment given to him under his father's will, appointing the trust corpus to the executors and trustees under his will who were non-residents of Pennsylvania.

On December 5, 1947, accountant, the Fidelity Trust Company of Pittsburgh, as trustee, filed its sixth and final account. On December 24, 1947, the appointees of Henry Kendall Thaw filed their election to take in kind the property held in trust A voluntary distribution of $79,000 in cash had been made on July 7, 1947. A supplement to the sixth and final account showed a further voluntary distribution of bonds at a valuation of $134,554.51 on January 6, 1948, and a similar distribution of stock at a valuation of $114,383.13 on January 9, 1948. At the audit held on January 21, 1948, the accountant offered in evidence an audit statement to which was attached the supplemental account. The auditing judge held that it was an active trustee within the intendment of the taxing statutes involved, and as such had the duty of declaring the securities of the trust corpus owned, held, or possessed by it on January 1, 1948, and paying the taxes thereon. The court in banc

sustained exceptions filed and disallowed the tax claims of the School District of Pittsburgh, the County of Allegheny, and the City of Pittsburgh. The taxing authorities appealed.

It is an unquestioned principle or rule that no tax can be collected in the absence of a statutory provision clearly imposing it upon a class to which a taxpayer or his property belongs. *Dixon's Case*, 138 Pa. Superior Ct. 385, 387, 11 A. 2d 169. But, where the taxpayer or his property is within the general language of the statute imposing the tax, all exempting provisions are to be strictly construed against the claim for exemption. *Callery's Appeal*, 272 Pa. 255, 272, 116 A. 222; *Bayer's Estate*, 345 Pa. 308, 312, 26 A. 2d 202; *Estate of Dalzell*, 96 Pa. Superior Ct. 467, 470; *Shillington Bank Case (Mohnton Trust Company Case)*, 129 Pa. Superior Ct. 316, 320, 195 A. 918, affirmed 331 Pa. 540, 1 A. 2d 677.

At least prior to the death of the life beneficiary the trust was an active trust; there is no semblance of a suggestion to the contrary. Upon the death of Henry Kendall Thaw, it may be that the legal title to the trust property passed to the remaindermen or his appointees. But we are of the opinion that the trust did not necessarily come to an end upon the happening of that event. His death did not make accountant thereupon a mere custodian, and the notice to take in kind did not ipso facto change an active trust into a mere custodianship of the securities in its hands. All of the duties of the trustee had not terminated on January 1, 1948. "Although the time for the termination of the trust has arrived in accordance with the terms of the trust, the trustee does not thereby necessarily cease to be trustee, but he continues to be trustee until the trust is finally wound up. The period for winding up the trust is the period after the time for termination of the trust has arrived and before the trust is terminated by the distribution of the trust property": Restatement, Trusts, vol. II, § 344, Comment (a).

As of January 1, 1948, the determinative date, important and affirmative duties still rested upon the trustee, and these duties were sufficient, in our judgment, to make the trust active within the meaning of that term as used in the statutes. There remained the duty of making a final and complete account, of obtaining court approval and confirmation of such account, of protecting the trust property, and of making actual physical distribution of the trust property to the persons entitled thereto. Such trust was terminated only when the trustee had finally accounted and conveyed the trust property to the persons entitled to it. Scott on Trusts, § 344, vol. 3, p. 1889.

The court in banc, in refusing to allow the tax claims, relied upon the principle that, upon the death of the life tenant, legal title immediately vested in the remaindermen and the trust terminated, citing *Westcott v. Edmunds*, 68 Pa. 34; *Williams's Appeal*, 83 Pa. 377; *Stokes's Appeals*, 80 Pa. 337; *Bacon's Appeal*, 57 Pa. 504; *Sheaff's Estate*, 231 Pa. 251, 80 A. 361. We do not question the general principle stated by the court in banc, but it is not decisive of the question raised on these appeals. The present problem relates to the termination of a trust from the standpoint of legislative intention and the power of the political subdivisions of the Commonwealth, acting under legislative authority, to impose a tax upon the corpus of the trust. Moreover, for all practical purposes, prior to the actual distribution, the trust remained active and was subject to the taxing power of the Commonwealth on January 1, 1948. We think the intention of the legislature and the various political subdivisions to impose a tax upon the trust property here involved, in the hands of the accountant as trustee, is sufficiently evident from the Acts of Assembly, the ordinance of the City of Pittsburgh, and the resolution of the School District of Pittsburgh.

The decree of the court below is reversed, and the schedule of distribution entered on March 17, 1948, is reinstated. Costs are to be paid by appellees.