## Dorsey Estate

Before Sinkler, P. J.; Klein, Bolger, Ladner, Hunter and Boland, JJ.

. . .

336

*T. McKeen Chidsey*, Attorney General, and *F. Gilman Spencer*, Special Deputy Attorney General, for exceptants.

*Cornelius C. O'Brien*, contra.

LADNER, J., December 9, 1949.—The exceptions before us are to the decision of Judge Bolger, the hearing judge, of the inheritance tax appeal taken by Eleanor A. Dorsey and Isabelle A. Dorsey from the assessment of inheritance tax imposed on them as designated beneficiaries by their brother, Harry J. Dorsey, of his interest in a "Savings and Profit Shar-

ing Pension Fund of Sears, Roebuck and Company Employees".

On decedent's death there stood to his credit in the fund 932 shares of stock of the Sears, Roebuck & Company (corporation) of a value of $35,183, upon which the tax was assessed by the register in the sum of $3,518.30. The tax assessment record shows that in addition to the above-mentioned shares there was also paid by the fund the sum of $4,324.19, in cash, of which sum $3,939.29 represented payments made into the fund by decedent, and the balance $384.90 being interest which accrued after decedent's death. The whole sum of $4,324.19 was paid by the recipients, Eleanor A. Dorsey and Isabelle A. Dorsey, over to the estate of decedent, inventoried and accounted for in that estate. Of this sum, $3,939.29 was assessed as distributed to the Dorsey sisters and made subject to the transfer inheritance tax which was paid, but no appeal taken from that assessment.

It is the contention of learned counsel for the appealing Dorsey sisters that so far as inheritance taxes are concerned, a distinction must be drawn between these two credits paid by the "fund" in that the stock distribution accrued entirely from the profit sharing contributions made by Sears, Roebuck & Company (though credited to decedent's interest in the pension fund) and the cash deposits made by decedent himself to the fund. That further, because of this difference, the designation of the Dorsey sisters as beneficiaries of the whole credit to decedent, so far as the company contributions were concerned, should be regarded as the equivalent of a power of appointment and therefore exempt from inheritance tax under the proviso of subdivision (d), sec. 1 of the Transfer Inheritance Tax Act of June 20, 1919, P. L. 521, as amended, 72 PS §2301. The learned hearing judge so ruled and set aside the assessment of the tax on the company's con-

tributions. His action in so doing is the subject of exceptions filed by the Commonwealth which are now before us.

There is no dispute as to the essential facts, based as they are on a record composed of a stipulation of counsel and a printed copy of the "Rules and Regulations of the Profit-Sharing Pension Fund of Sears, Roebuck Company, Employees". The provisions of the rules and regulations, so far as relevant to the issue before the court, may be summarized as follows:

By article I, the purpose of the fund is stated to be threefold: (1) To permit eligible employes to share in the company's profits; (2) to encourage the habit of saving; (3) to provide at retirement an income or pension from the employe's accumulation of his savings and his share of the profits and earnings. The article then continues:

"It is intended that the fund will furnish to those depositors who remain in the employ of the company or its subsidiaries until they reach the age when they retire from active service, a sum to provide for them, in part, thereafter; *and that even those who do not remain until retirement will have accumulated a substantial sum.* In order to carry out this important purpose of the Fund, withdrawals prior to retirement have always been restricted, and, as is logical, will continue to be restricted." (Italics supplied.)

Article II makes every regular employe of the company or its subsidiaries eligible to participate, and article III requires him to deposit five percent of his compensation, but not more than $250 per annum. Section 2 of this article sets forth the scale of the company's contribution of its annual profits to the fund. Article IV divides the participating employes into four groups: Group A being depositors who have less than five years' continuous service; group B, 5 years to 10 years' service; group C, 10 years to 15 years' serv-

ice, and over 50 years of age; group D, 15 years or more and over 50 years of age. The company's contribution of its profits is then divided or apportioned among the depositors according to their group in a scale set forth, those of group D receiving the largest percentage of the profits.

Article V governs withdrawals, section 1 (*a*) thereof gives a depositor who has completed five years of continuous service the right to be entitled upon ceasing to be a member of the fund "to withdraw *all monies and securities credited to his account* at that time, subject to all restrictions hereinafter provided". These restrictions differ somewhat, according to the group to which the withdrawing depositor belongs. However, we are concerned only with group D, to which decedent, Dorsey, belonged at the time of his death.

Article VI regulates the group D depositors. These depositors have the right to withdraw *on or before retirement or while still in the employ of the company*, but the trustees of the fund have the discretion of fixing the *manner* in which the total to the credit of the withdrawing employes shall be paid, which may be either in securities, cash, or installment payments. Section 3 of that article governing the disposition of a member's credit after death, reads as follows:

Article VI, sec. 3. "In case of the death of any Group D depositor, the monies and securities then to the credit of such depositor's account in the Fund shall be paid, either at one time (in cash or kind) or in instalments in accordance with the provisions of Section 1 of this article as the trustees in their discretion shall determine, to such beneficiary or beneficiaries hereunder as the depositor shall have in writing designated, or to his estate in the event no such beneficiary shall have been designated hereunder."

The analysis of the rules and regulations makes it clear to us that there is really no logical distinction

between deposits to the fund made by the employe and contributions made by the employer, nor do the rules and regulations make any.

Decedent in his lifetime had thus a definite property right in all that stood to his credit in the fund whether that credit arose by reason of his share of the profit contributions by the company or by deposits made by him. This follows from the fact that the company's contributions were not only apportioned among the groups but divided in each group and credited to each member of the group. Moreover, the whole amount to his credit, whether composed of his share of the profits or his own deposit, decedent could have withdrawn in his lifetime before retirement and while still in the company's employ. The *right* to withdraw under the rules is made an *absolute* right, though the *manner* or method of payment of withdrawal was exclusively for the trustees of the fund to determine. But this power of the trustees extended no further than deciding whether the amount withdrawn should be paid in cash or securities, in a lump sum or in installments. See article VI, sec. 1(*a*). It follows, therefore, that decedent had a transmissible or transferable interest in the fund within the purview of the taxing statute's general provision apart from the exemption clause hereinafter discussed.

Turning now to the Transfer Tax Statute, we see that the Act of June 20, 1919, P. L. 521, art. I, sec. 1, as amended, 72 PS §2301, enacts that:

"A tax shall be, and is hereby, imposed upon the transfer of any property, real or personal, or of any interest therein or income therefrom, in trust or otherwise, to persons or corporations in the following cases,

. . .

"(c) When the transfer is of property made by a resident, . . . by deed, grant, bargain, sale, or gift, made in contemplation of the death of the grantor,

vendor, or donor, or intended to take effect in possession or enjoyment at or after such death."

The designation of the Dorsey sisters by decedent of the fund or credits which might have been withdrawn by him during his lifetime is undoubtedly a transfer by gift "intended to take effect in possession or enjoyment at or after such death".

However, the learned trial judge ruled that the share of the corporate profits contributed by the corporation and distributed by credits to each of its employes who were members of the fund, was not taxable because the designation of beneficiaries to receive the credit was, in effect, a power of appointment and within the terms of the exemption contained in subdivision (d) of the same section. This subdivision (d) reads as follows:

"When any person or corporation comes into the possession or enjoyment by a transfer from a resident . . . of an estate in expectancy or any kind or character which is contingent or defeasibly transferred by an instrument taking effect after the passage of this act, or of any property transferred pursuant to a power of appointment contained in any instrument taking effect after the passage of this act: . . . Provided, That property transferred pursuant to powers of appointment shall, in all cases where the power is hereafter exercised, be taxed as of the estate of the donor, notwithstanding any blending of such property with the property of the donee."

The question for our determination, therefore, is whether the action of decedent here, in designating his sisters to receive at his death *all* the deposits to his credits (including those made by the company) is the kind of power of appointment referred to in the proviso of the subdivision of the section just quoted.

In interpreting the meaning of the exempting clause, it is necessary to keep in mind the well-settled princi-

ple that "where the taxpayer or his property is within the general language of the statute imposing the tax, all exempting provisions are to be strictly construed against the claim for exemption". This statement, in Justice Simpson's concurring opinion in Callery's Appeal, 272 Pa. 255, 272, was cited with approval in Commonwealth v. Sunbeam Water Co., 284 Pa. 180, 183, and is still the law both under the Statutory Construction Act of May 28, 1937, P. L. 1019, sec. 58, as well as the later tax cases, among which are Bayer's Estate, 345 Pa. 308 (1942) ; Hermann Estate, 349 Pa. 230, 233 (1944), and Thaw's Estate, 163 Pa. Superior Ct. 484, 488 (1949).

Because of this principle, we may not extend the plain meaning of the exempting provision of the statute by implication. The very language of the proviso, referring the tax to the donor's estate "notwithstanding any blending" indicates that the legislature by the terms "powers of appointment" meant only the technical power of appointment and not something which might bear some resemblance thereto.

While the case is one of first impression, there are a few relevant authorities which support in principle our construction of the statute. The so-called technical power of appointment is well defined in section 318(1) of A. L. I. Restatement of the Law of Property as "a power created or reserved by a person (the donor) having property subject to his disposition, enabling the donee of the power to designate, within such limits as the donor may prescribe, the transferees of the property or the shares in which it shall be received". Indeed, as shown by the introductory note to chapter 5, page 1808, the A. L. I. Restatement of the Law of Property clearly indicates that a power of appointment is a right given to someone *other* than the owner to dispose of property *not his own*.

Here the contributions of the employer did not remain the employer's property but belonged to employe and such contributions, based as they were on a share of profits, must be considered as much a part of his wages as the money paid decedent at the time his services were rendered: Inland Steel Co. v. National Labor Relations Board, 170 F.(2d) 247 (1948) (cert. den. April 25, 1949).

In Housekeeper's Estate, 10 D. & C. 494 (1928), where employes paid over to trustees a portion of the wage pursuant to a plan whereby the trustees invested the fund and paid over to each member the income therefrom during life and principal upon leaving the employment or on his death to the beneficiary named by him, or if none named to his estate, we, speaking through Justice Stearne, then of this court, held an inheritance tax was due on the principal that passed to the beneficiary on the member's death. If, in the instant case we regard the employer's profitsharing contributions as part of the employe's wages, as we should, there is then no real distinction between it and the Housekeeper case.

We are also unable to agree with the learned auditing judge's view that decedent's right to withdraw the funds to his credit was analogous to a reserved right of revocation which Dolan's Estate, 279 Pa. 582 (1924), held did not (standing alone) make property conveyed in a deed of trust subject to the inheritance tax as a transfer to take effect in possession or enjoyment after death. Passing by the suggestion of our late colleague, President Judge Van Dusen, in Peterman's Estate, 56 D. & C. 365, 367 (1946), that Dolan's Estate has been overruled (though not in name) by Commonwealth v. Linderman's Estate, 340 Pa. 289, and cases there cited, it seems to us, as argued by the learned counsel for the Commonwealth, that the right to withdraw in the instant case confirms the view that it indicates a vested

interest and absolute ownership of the amount credited to decedent during his life.

The exceptions must be sustained.